Civil Action No. 7:26-cv-_____

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# MCALLEN DIVISION

Civil Action No. 7:26-cv-_____

ANGEL ADALBERTO ALANIS JR.,

     Plaintiff,                                                                Civil Action No. 7:26-cv-_____

v.

Officer PABLO RAMIREZ, Badge No. C-10,

in his individual capacity,

Investigator LEONEL CANTU JR.,

in his individual capacity,

JOHN DOE #1, Assistant District Attorney

for the Hidalgo County District

Attorney's Office,

in his individual capacity,

JOHN DOE #2, Assistant District Attorney

for the Hidalgo County District

Attorney's Office,

in his individual capacity,

Toribio PALACIOS, District Attorney

for Hidalgo County, Texas,

in his official capacity,

     Defendants.

Civil Action No. 7:26-cv-____

## ORIGINAL COMPLAINT

### (42 U.S.C. § 1983)

### NATURE OF ACTION

This is a civil rights action under 42 U.S.C. § 1983 arising from fabricated police reports and sworn charging documents, fabricated criminal charges, and a malicious prosecution conducted by a Weslaco Police Department officer and assistant district attorneys of the Hidalgo County District Attorney's Office.

On September 2, 2022, Officer Pablo Ramirez of the Weslaco Police Department conducted a traffic stop on Plaintiff's vehicle at approximately 3:21 a.m. Officer Ramirez's in-car dashcam recorded the entire encounter. During the stop, Plaintiff was calm, cooperative, made eye contact with the officer, and personally answered every question posed. Officer Ramirez subsequently prepared a narrative report containing fabricated statements—that Plaintiff "refused to make any eye contact," was "very nervous," made "a lot of furtive movements with his hands," and that Plaintiff's passenger "was answering all the questions." Each of these statements is contradicted by the officer's own dashcam video and audio. Investigator Leonel Cantu Jr., who was not present during the encounter, then incorporated these same fabrications into a sworn criminal complaint and affidavit for arrest warrant—attesting under oath to their truth without reviewing the available dashcam recording.

The Weslaco Police Department seized four categories of pills from Plaintiff's vehicle but submitted only one—177 pills later confirmed as methylphenidate—to the DPS Crime Laboratory for testing. The laboratory confirmed the substance was methylphenidate weighing 22.48 grams. No other seized substance was ever scientifically tested or confirmed as a controlled substance.

Despite possessing these laboratory results, the Hidalgo County District Attorney's Office filed two fabricated charges: (1) a felony indictment for Possession of a Controlled Substance, Penalty Group 3, in an amount of 28 grams or more but less than 200 grams—when the labora-

3

Civil Action No. 7:26-cv-_____

tory confirmed only 22.48 grams, a weight corresponding to a Class A misdemeanor—and (2) a misdemeanor charge for possession of clonazepam, a substance that was never submitted to any laboratory and never confirmed by any scientific method to be a controlled substance. Both fabricated charges were maintained for over a year and used as plea leverage in a negotiated disposition on January 29, 2024.

Plaintiff seeks compensatory and punitive damages against the individual Defendants and asserts municipal liability against Defendant Palacios in his official capacity under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the customs and policies of the Hidalgo County District Attorney's Office that produced these fabricated charges.

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

2. Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred in Hidalgo County, Texas, within the Southern District of Texas, McAllen Division.

## II. PARTIES

3. Plaintiff Angel Adalberto Alanis Jr. is a resident of Starr County, Texas, and was at all relevant times lawfully present in Hidalgo County, Texas.

4. Defendant Officer Pablo Ramirez, Badge No. C-10, is and was at all relevant times a police officer employed by the Weslaco Police Department, acting under color of state law. He conducted the traffic stop and arrest of Plaintiff on September 2, 2022, and prepared the narrative report containing fabricated statements of fact contradicted by his own dashcam recording. His narrative served as the source material for the sworn charging documents prepared by Investigator Cantu. He is sued in his individual capacity for damages.

5. Defendant Investigator Leonel Cantu Jr. is and was at all relevant times a peace officer and

4

investigator employed by the Weslaco Police Department, acting under color of state law. Cantu was not present during the traffic stop or arrest. He authored and swore under oath to the criminal complaint and the affidavit for probable cause for arrest warrant, incorporating fabricated statements from Officer Ramirez's narrative report and attesting to their truth as his own personal beliefs without independently reviewing the dashcam recording maintained by his own department. He is sued in his individual capacity for damages.

6. Defendant John Doe #1 is and was at all relevant times an Assistant District Attorney employed by the Hidalgo County District Attorney's Office, acting under color of state law. On December 7, 2022, Doe #1 signed and filed a criminal complaint charging Plaintiff with possession of clonazepam—a substance that had never been submitted for laboratory testing and was never confirmed by any scientific method to be a controlled substance. Doe #1 is sued in his individual capacity for damages.

7. Defendant John Doe #2 is and was at all relevant times an Assistant District Attorney employed by the Hidalgo County District Attorney's Office, acting under color of state law. During the July 2023 term of the 92nd Judicial District Court, Doe #2 presented to the grand jury a felony indictment alleging Plaintiff possessed methylphenidate in an amount of 28 grams or more, when the DPS Crime Laboratory report—issued six months earlier— confirmed the weight as 22.48 grams, corresponding to a Class A misdemeanor. Doe #2 is sued in his individual capacity for damages.

8. Defendants Doe #1 and Doe #2 may be the same individual. Plaintiff will identify each through discovery and amend this complaint accordingly.

9. Plaintiff will seek leave to amend to identify Doe #1 and Doe #2 by name, and such amendment will relate back to the filing date of this complaint under Fed. R. Civ. P. 15(c)(1)(C) because the Doe Defendants, as employees of the Hidalgo County District Attorney's Office, received notice of this action within the period provided by Rule 4(m) and knew or should

5

Civil Action No. 7:26-cv-_____

have known it would have been brought against them but for Plaintiff's inability to identify them by name.

10. Defendant Toribio Palacios is the elected District Attorney for Hidalgo County, Texas. He is sued in his official capacity for damages arising from customs, policies, and practices maintained by the Hidalgo County District Attorney's Office under his supervision and control.

### III. TIMELINESS

11. Both charges arising from the September 2, 2022 arrest were dismissed on January 29, 2024. Plaintiff's malicious prosecution claims accrued on that date. The raw two-year statute of limitations expired on January 29, 2026.

12. This action is timely because the statute of limitations was tolled by Defendants' fraudulent concealment. The facts supporting tolling are set forth in Section IV, Subsection H below.

13. Under the discovery rule as applied through equitable tolling, the statute of limitations runs from the date Plaintiff discovered, or through reasonable diligence should have discovered, the fabrications underlying his claims. Plaintiff did not discover the fabrications until June 20, 2025 at the earliest. This complaint, filed within two years of that discovery, is timely as to all claims.

14. To the extent Plaintiff's Fourth Amendment claims against Officer Ramirez for false arrest accrued upon detention pursuant to legal process under *Wallace v. Kato*, 549 U.S. 384 (2007), the statute of limitations was independently tolled by the same fraudulent concealment, as the fabricated narrative report and sworn charging documents concealed the constitutional violations underlying the arrest. Plaintiff did not obtain these documents or the dashcam footage revealing the fabrications until June 20, 2025.

15. Plaintiff's *Monell* claim against Defendant Palacios in his official capacity is derivative of the underlying constitutional violations committed by the individual Defendants. Those vio-

6

lations were concealed by the same fabricated documents that toll the individual claims. The *Monell* claim is therefore subject to the same fraudulent concealment tolling and is timely.

## IV. FACTUAL ALLEGATIONS

### A. The Traffic Stop

16. On September 2, 2022, at approximately 3:21 a.m., Officer Pablo Ramirez of the Weslaco Police Department initiated a traffic stop on Plaintiff's vehicle—a white 2021 Kia K5—on or near a frontage road in Weslaco, Texas, for an alleged unsafe lane change.

17. Officer Ramirez's fully marked patrol unit was equipped with an in-car dashcam system that recorded both video and audio of the entire encounter. The dashcam recording captures the interaction at Plaintiff's vehicle window, including all dialogue between Officer Ramirez, Plaintiff, and Plaintiff's passenger.

18. Plaintiff immediately provided his insurance documents upon contact. When Officer Ramirez requested his driver's license, Plaintiff explained that he did not have it in his physical possession but could locate a photograph of it on his phone. Officer Ramirez instructed Plaintiff to search his phone for the license.

19. While Plaintiff was searching his phone for the license photograph, Officer Ramirez initiated a series of questions unrelated to the traffic infraction:

   - Officer Ramirez asked Plaintiff where he and his passenger were "coming from." When the passenger began to answer, Officer Ramirez interrupted her, directing the question specifically to Plaintiff: "Sir, sir, where y'all coming from." Plaintiff answered.

   - Officer Ramirez asked where they were going. Plaintiff's passenger stated "my house." Plaintiff confirmed and made small talk: "Yes sir, you having a good night."

   - Officer Ramirez then stated: "Y'all are smoking out or what?" while gesturing as if waving smoke from his face. He added: "You got smoke coming out of the car."

7

The dashcam video shows no visible smoke exiting the vehicle at any point during the encounter.

- Plaintiff responded: "We're vaping out but that's a big difference." Plaintiff explained that he and his passenger had been using delta-8 and delta-11 vape products, which are legal in Texas.

- Officer Ramirez acknowledged the substance was not illegal, stating: "I'm not saying it's illegal, sir."

- Officer Ramirez then asked: "Have you been drinking, sir?" Plaintiff responded "No." Officer Ramirez pressed: "At all?" Plaintiff again responded "No."

- Officer Ramirez then asked: "So y'all don't have anything illegal inside the vehicle?" Before Plaintiff could fully respond, Officer Ramirez asked: "Do you give me consent to search your vehicle?" Plaintiff granted permission.

20. At no point during the recorded interaction prior to obtaining consent did Officer Ramirez issue a citation or written warning for the alleged traffic infraction. No citation or warning for the unsafe lane change exists in the record of this case. Officer Ramirez abandoned the stated mission of the traffic stop—enforcement of the traffic violation—and instead conducted an investigatory drug inquiry that produced no evidence of criminal activity before requesting consent to search.

21. Officer Ramirez obtained Plaintiff's name and date of birth and relayed the information to dispatch via his radio while Plaintiff was still searching for his license. Dispatch had not returned results at the time Officer Ramirez requested consent to search.

22. After Plaintiff consented to the vehicle search, Officer Ramirez directed Plaintiff to exit the vehicle. Once outside, Officer Ramirez directed Plaintiff to turn around with his hands raised, searched Plaintiff's pockets, and conducted a full pat-down of Plaintiff's person. Officer Ramirez did not ask for or obtain Plaintiff's consent to search his person. Plaintiff had consented only to a search of his vehicle.

Civil Action No. 7:26-cv-\_\_\_\_\_

23. Officer Ramirez did not pat down or search Plaintiff's passenger, Ninfa Vela, despite both occupants having been present in the same vehicle during the interaction that Officer Ramirez would later characterize as involving "furtive movements."

24. During the search of Plaintiff's vehicle, Officer Ramirez located four packages of pills in a backpack and the center console. Each package bore a handwritten marker label: "Adderall" (177 pills), "Vyvanse" (54 pills), "Clonazepam" (101 pills), and "Xanax" (30 pills). None of the pills were in prescription bottles.

25. Plaintiff claimed ownership of all pills and presented Officer Ramirez with a prescription for the substances. Officer Ramirez disregarded the prescription and left it inside the vehicle. No mention of the prescription appears in Officer Ramirez's narrative report, Investigator Cantu's sworn complaint, or any other document in the case file.

26. Officer Ramirez weighed the substances individually at the Weslaco Police Department:

   • "Adderall" (177 pills): 23 grams

   • "Vyvanse" (54 pills): 11 grams

   • "Clonazepam" (101 pills): 17.1 grams

   • "Xanax" (30 pills): 7.7 grams

27. Plaintiff was arrested and transported to the Weslaco City Jail. Bond was set at $50,000. Plaintiff posted bond and was released approximately one day later. Plaintiff's vehicle was towed and impounded.

**B. The Fabricated Reports and Sworn Charging Documents**

28. Officer Ramirez prepared a narrative report documenting the traffic stop and arrest. The narrative contains fabricated statements of fact that are directly contradicted by the dashcam recording Officer Ramirez himself created.

29. Separately, Investigator Leonel Cantu Jr. authored and swore under oath to the criminal com-
plaint and the affidavit for probable cause for arrest warrant. Cantu was not present during
the traffic stop. He incorporated the same fabricated statements from Ramirez's narrative
into these sworn instruments, attesting under oath that he personally had reason to believe
and did believe the facts stated therein.

30. The sworn complaint bears internal evidence that Cantu performed no independent review
before attesting to its truth. The document shifts between third-person references to Offi-
cer Ramirez and first-person language describing actions Cantu did not perform—including
claiming in the first person to have received Plaintiff's consent and conducted the vehicle
search. These pronoun inconsistencies demonstrate that Cantu copied Ramirez's narrative
into the sworn complaint without reading it carefully enough to maintain consistent attribu-
tion, let alone verify its accuracy against available evidence.

31. The dashcam recording was created by Weslaco Police Department equipment, stored on
Weslaco Police Department systems, and available to any Weslaco Police Department inves-
tigator. Before swearing under oath to another officer's account of an encounter, a reasonable
investigator would review the contemporaneous recording of that encounter. Cantu did not.
Had he done so, every fabrication in the narrative he swore to would have been apparent.

32. In the separate affidavit for probable cause for arrest warrant, Cantu vouched for Officer
Ramirez's credibility and directed the reviewing magistrate to rely on the attached reports—
the same reports containing fabricated statements that the dashcam contradicted in every
material respect.

33. **Fabrication: "Angel refused to make any eye contact with Officer Ramirez."** The dash-
cam video shows Plaintiff making direct eye contact with Officer Ramirez through the vehi-
cle's side-view mirror during the conversation. This statement is false.

34. **Fabrication: "Ninfa was answering all the questions Officer Ramirez was asking An-**

10

gel." The dashcam audio records Plaintiff personally answering every substantive question—
where he was coming from, what he was smoking, whether he had been drinking, his name,
his date of birth, and whether anything illegal was in the vehicle. Plaintiff's passenger of-
fered one response ("my house") during the entire exchange. Officer Ramirez himself di-
rected questions specifically to Plaintiff, at one point interrupting the passenger: "Sir, sir,
where y'all coming from." The characterization that the passenger "was answering all the
questions" is false.

35. **Fabrication: "Angel was very nervous."** The dashcam audio records Plaintiff speaking in a
calm, conversational tone throughout the encounter. Plaintiff made small talk with the officer
("you having a good night"), engaged substantively on the vaping question, and responded
to all inquiries without audible distress. The characterization of Plaintiff as "very nervous"
is false.

36. **Fabrication: "[Angel] made a lot of furtive movements with his hands."** The dashcam
audio records Plaintiff stating that he was searching for his driver's license on his phone—
precisely the activity Officer Ramirez had instructed him to perform—and when Plaintiff
exited the vehicle, the dashcam video shows his cellular phone in his hands. At no point
during the dashcam-recorded interaction did Plaintiff's hands leave the officer's line of sight
or move in any manner inconsistent with the phone search Ramirez had directed. At no
point during the encounter did Officer Ramirez make any contemporaneous comment about
Plaintiff's hand movements, issue any safety instruction such as "keep your hands where
I can see them," or take any action suggesting genuine concern about furtive movements.
The term "furtive movements" is a recognized law enforcement term of art used to establish
reasonable suspicion for investigatory detentions under *Terry v. Ohio*, 392 U.S. 1 (1968).
Officer Ramirez inserted this language into the written record after the fact to manufacture a
retroactive justification for the warrantless pat-down of Plaintiff's person described in Sub-
section A above. A *Terry* pat-down requires reasonable suspicion that the subject is armed

and dangerous. By fabricating "furtive movements," Officer Ramirez created a paper trail suggesting a safety concern that would justify the search of Plaintiff's person—a search for which he had no consent, no reasonable suspicion, and no other lawful basis.

**False Verbal Pretext: Claim of Visible Smoke.** Officer Ramirez stated during the recorded encounter that "You got smoke coming out of the car" and gestured as if waving smoke from his face. The dashcam video (exterior view from directly behind the vehicle) shows \*\*no visible smoke at any point\*\*. Officer Ramirez immediately used this false observation to pivot the traffic stop into a drug investigation. This live falsehood is contradicted by the very recording he created.

37. **Material Omission: The smoke and vaping exchange.** Officer Ramirez's narrative report and Investigator Cantu's sworn complaint omit the entire exchange regarding smoke and vaping—an exchange that Officer Ramirez himself initiated and that constitutes the only investigative inquiry he conducted before requesting consent. The exchange, captured on dashcam audio, reveals that Officer Ramirez claimed to observe smoke, Plaintiff explained he was vaping a legal substance, and Officer Ramirez acknowledged: "I'm not saying it's illegal, sir." This exchange is material because it demonstrates that Officer Ramirez's sole basis for suspicion—his claim of observing smoke—yielded no evidence of criminal activity and was itself a fabrication contradicted by the dashcam video.

38. **Material Omission: The drinking inquiry.** Officer Ramirez asked Plaintiff whether he had been drinking. Plaintiff denied it twice. This exchange is omitted from all written reports. It is material because it demonstrates a second investigative line that produced no evidence of criminal activity.

39. **Material Omission: Plaintiff's prescription.** Upon arrest, Plaintiff presented Officer Ramirez with a prescription for the seized substances. Officer Ramirez disregarded the prescription and left it inside the vehicle. No mention of the prescription appears in Officer Ramirez's narrative report, Investigator Cantu's sworn complaint, or any other document in the case

Civil Action No. 7:26-cv-_____

file. A prescription—regardless of its ultimate legal validity—is material to the probable cause determination because it bears directly on a defendant's knowledge, intent, and claim of right to possess the substances.

40. **The cumulative effect of the fabrications and omissions.** The written record—Officer Ramirez's narrative report and Investigator Cantu's sworn complaint—constructs a narrative of a nervous, evasive suspect making furtive movements while his passenger answered for him—a profile suggesting consciousness of guilt. The dashcam recording reveals a calm, cooperative driver making eye contact, personally answering every question, scrolling through his phone as instructed, identifying the substance he was using as legal, denying alcohol consumption, presenting a prescription upon arrest, consenting to a vehicle search after an investigatory inquiry that produced no evidence of criminal activity—an inquiry premised on Officer Ramirez's verbal claim of visible smoke that the dashcam itself disproves—and then being subjected to a warrantless pat-down of his person without consent before the vehicle search even began.

41. Under the framework of *Franks v. Delaware*, 438 U.S. 154 (1978), if the fabricated statements are excised from the sworn charging documents and the material omissions are restored, the record describes a routine traffic stop in which a calm, cooperative driver answered all questions, denied any illegal activity, identified his vaping substance as legal, denied drinking, and presented a prescription for the pills found in his vehicle. These corrected documents do not establish probable cause for arrest.

## C. The Selective Laboratory Submission

42. Officer Ramirez seized four categories of pills from Plaintiff's vehicle, totaling 362 pills across four substances identified solely by handwritten marker labels on the packaging.

43. On or about October 20, 2022—approximately 48 days after the arrest—the Weslaco Police Department submitted only 177 pills to the Texas Department of Public Safety Crime Lab-

13

Civil Action No. 7:26-cv-_____

oratory for analysis. The laboratory submission form states "No 2nd Page." No additional submission forms from the Weslaco Police Department exist in the case file for any of the remaining 185 pills.

44. The remaining three categories of pills—labeled "Vyvanse" (54 pills, 11g), "Clonazepam" (101 pills, 17.1g), and "Xanax" (30 pills, 7.7g)—were never submitted for laboratory testing by any method.

45. On January 20, 2023, the DPS Crime Laboratory issued its report. The 177 submitted pills were confirmed as methylphenidate, a Penalty Group 3 controlled substance, weighing 22.48 grams. No other substance was identified because no other substance was submitted.

46. No field testing records for any of the four categories of seized pills appear in the case file.

47. The identity of the remaining three categories of pills as controlled substances has never been established by any scientific method—neither field presumptive test nor confirmatory laboratory analysis. The sole basis for identifying these substances was the handwritten marker labels on packaging of pills purchased in Mexico.

**D. The District Attorney's Fabricated Charges**

**1. The Fabricated Felony Weight**

48. On or about the July 2023 term of the 92nd Judicial District Court, the Hidalgo County District Attorney's Office presented to the grand jury—and the grand jury returned—a felony indictment charging Plaintiff with Possession of a Controlled Substance, Penalty Group 3, in an amount of 28 grams or more but less than 200 grams (methylphenidate). The indictment bore cause number CR-4168-23-H.

49. The DPS Crime Laboratory report, issued January 20, 2023—approximately six months before the indictment—confirmed the substance as methylphenidate weighing 22.48 grams.

14

50. Possession of a Penalty Group 3 controlled substance in an amount less than 28 grams is a Class A misdemeanor under Texas Health and Safety Code § 481.117(b). Possession of a Penalty Group 3 controlled substance in an amount of 28 grams or more but less than 200 grams is a felony of the third degree under § 481.117(d).

51. The threshold between misdemeanor and felony classification is 28 grams. The laboratory-confirmed weight was 22.48 grams—5.52 grams below the felony threshold.

52. The Assistant District Attorney who presented this indictment to the grand jury selectively used the DPS laboratory report for substance identification—correctly identifying methylphenidate as a Penalty Group 3 substance—while rejecting the weight determination from the same laboratory report. The felony weight allegation of "28 grams or more" cannot be reconciled with the laboratory finding of 22.48 grams. This constitutes fabrication of the weight element of the charged offense to convert a Class A misdemeanor into a third-degree felony.

53. This conduct is not a discretionary charging decision protected by absolute prosecutorial immunity. The fabrication of a factual predicate—the weight of the substance—is investigative and administrative conduct subject only to qualified immunity under *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), and *Kalina v. Fletcher*, 522 U.S. 118 (1997). A prosecutor who attests to fabricated facts functions as a witness, not an advocate.

54. No reasonable prosecutor could believe it lawful to present an indictment alleging a substance weighs 28 grams or more when the confirmatory laboratory report—in the prosecutor's own file—establishes the weight as 22.48 grams. Qualified immunity does not shield this conduct.

## 2. The Unsupported Clonazepam Charge

55. On December 7, 2022, an Assistant District Attorney for the Hidalgo County District Attorney's Office signed and filed a criminal complaint charging Plaintiff with Possession of a

Controlled Substance, Penalty Group 3, in an amount of less than 28 grams (clonazepam). The complaint bore cause number CR-22-12280-A.

56. At the time this charge was filed, the substance identified as "clonazepam" had not been submitted to any laboratory for testing. The Weslaco Police Department's laboratory submission form—submitted on or about October 20, 2022—included only the 177 pills later confirmed as methylphenidate. No submission was made for the 101 pills labeled "Clonazepam."

57. No field testing records for the alleged clonazepam exist in the case file.

58. The sole basis for identifying the substance as clonazepam was a handwritten marker label on a package of pills purchased in Mexico. The Assistant District Attorney filed a criminal charge for possession of a controlled substance that had never been confirmed as a controlled substance by any scientific method.

59. When the DPS laboratory report was issued on January 20, 2023, it identified only methylphenidate. The report contained no reference to clonazepam because no substance identified as clonazepam had been submitted for testing. The issuance of this report put the District Attorney's Office on notice that the laboratory had not confirmed—and would not confirm—the substance underlying the clonazepam charge. The office maintained the charge for an additional twelve months without seeking laboratory confirmation.

60. Filing a criminal charge for possession of a controlled substance without any scientific confirmation that the substance is in fact a controlled substance constitutes fabrication of the evidentiary basis for the charge. This is investigative and administrative conduct, not prosecutorial advocacy, and is subject only to qualified immunity under *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993).

Civil Action No. 7:26-cv-_____

### E. Plea Coercion and Dismissal

61. On or about January 29, 2024, both charges arising from the September 2, 2022 arrest—the fabricated felony (CR-4168-23-H) and the unsupported clonazepam misdemeanor (CR-22-12280-A)—were dismissed as part of a negotiated plea agreement in a separate case.

62. Neither charge resulted in a conviction. Both terminated in Plaintiff's favor, satisfying the favorable termination requirement for malicious prosecution under *Thompson v. Clark*, 596 U.S. 36 (2022).

63. The separate case involved an aggravated assault charge arising from an unrelated arrest on August 22, 2023. Plaintiff entered a plea of guilty to the aggravated assault charge. The plea agreement included dismissal of the two Weslaco charges.

64. The fabricated felony and the unsupported clonazepam charge served as bargaining chips in the plea negotiations. The charges were maintained for the purpose of aggregating charges to maximize plea leverage—a practice that is coercive when the aggregated charges lack a factual basis.

65. To the extent Plaintiff's allegations of plea coercion could be construed as implying the invalidity of the aggravated assault conviction resulting from that plea agreement, no such barrier exists. On December 17, 2025, the 389th Judicial District Court of Hidalgo County granted Plaintiff's application for Writ of Habeas Corpus, vacating the Order of Deferred Adjudication on the aggravated assault charge and withdrawing Plaintiff's guilty plea as involuntary. No extant conviction implicates *Heck v. Humphrey*, 512 U.S. 477 (1994).

### F. The Post-Habeas Reindictment and Cascading Harm

66. On or about January 8, 2026, following the vacatur of Plaintiff's plea, the Hidalgo County District Attorney's Office obtained a new indictment arising from the same September 2,

2022 arrest. The new indictment charges Plaintiff with Manufacture or Delivery of a Controlled Substance, Penalty Group 3, in an amount of less than 28 grams (methylphenidate).

67. The new indictment correctly identifies the substance as methylphenidate and the weight as less than 28 grams—effectively conceding that the original felony indictment's allegation of "28 grams or more" was false.

68. The new indictment contains a tolling provision alleging that "an indictment charging the above offense" was previously pending. This allegation is false: the prior indictment charged simple possession, not manufacture or delivery. These are distinct offenses with different elements under Texas law. Under *Marks v. State*, 2018 Tex. Crim. App. LEXIS 921 (Tex. Crim. App. 2018), a prior indictment for possession cannot toll the statute of limitations for manufacture or delivery because the offenses do not share the same elements.

69. The fabricated felony indictment from July 2023 is thus the direct origin of ongoing constitutional injury: it provided the predicate for a false tolling allegation in the January 2026 manufacture/delivery indictment.

## G. The District Attorney's Systematic Custom of Filing Without Verification and Active Overcharging

70. The fabricated charges in Plaintiff's case were not isolated errors. They are the product of a systematic custom maintained by the Hidalgo County District Attorney's Office: mechanically processing cases into charges without verifying that the evidence supports the charged offense, independently fabricating or overstating factual elements when convenient, filing controlled-substance charges without any scientific confirmation, accepting police narratives without reviewing available recordings, and maintaining charges even when evidence in the office's own possession directly contradicts them—regardless of the submitting law enforcement agency.

71. **The Pedroza Pattern as Institutional Knowledge.** Between May 2017 and August 2024,

Civil Action No. 7:26-cv-_____

the District Attorney's Office prosecuted twenty-three cases submitted by DPS Trooper Pablo Pedroza containing verbatim identical language across unrelated suspects. As more fully detailed in Plaintiff's pending related action *Alanis v. Pedroza et al.*, No. 7:25-cv-00393 (S.D. Tex.), those cases involved identical scripted observations and arrest procedures that were the subject of repeated constitutional challenges. By September 2023, the Hidalgo County District Attorney's Office had received actual notice of the deficiencies through suppression motions challenging Fourth Amendment violations, dismissals on the day Pedroza was subpoenaed to testify, dismissals "in the interest of justice," and the Office's own declinations to prosecute certain arrests. In 2024, a court entered an explicit judicial finding of "Lack of probable cause for the arrest. Lack of reasonable suspicion." Despite this multi-year pattern and repeated notice—including the 2024 judicial finding—the Office implemented no verification procedures, no officer-credibility tracking, and no cross-case analysis.

72. **The 19-Day Cross-Agency Pattern.** Within a nineteen-day period in August–September 2023, the District Attorney's Office filed (or maintained) three facially deficient cases against Plaintiff from three separate agencies:

- **August 31, 2023 (DPS – Pedroza):** Charged possession of loperamide (an over-the-counter medication not in any Penalty Group) despite laboratory results confirming the substance was legal.

- **September 5, 2023 (Weslaco PD):** The fabricated felony and unsupported clonazepam charges at issue here.

- **September 18, 2023 (McAllen PD):** Incorporated video-contradicted fabrications, arrest-before-investigation chronology, and forensic impossibilities, as more fully detailed in Plaintiff's pending related action *Alanis v. Lozano et al.*, No. 7:25-cv-00443 (S.D. Tex.).

73. **The Fabricated Felony Weight and Unsupported Clonazepam Charge in This Case.**

19

Civil Action No. 7:26-cv-_____

The office had the DPS laboratory report (22.48 grams methylphenidate) in its possession for six months before presenting the felony indictment alleging "28 grams or more." It filed the clonazepam charge with zero laboratory or field testing and maintained it for twelve additional months after the laboratory report confirmed no clonazepam had ever been submitted. These are not close calls or discretionary judgments; they are binary factual failures.

## 1. Custom of Charging and Indicting Without Verifying Laboratory Results Against the Allegations

74. The DA's office filed and presented felony indictments without comparing the charged weight or substance classification against laboratory reports in its own file. This custom produced the fabricated felony here (22.48 g confirmed vs. 28 g+ alleged) and the loperamide charge (legal medication charged as controlled substance).

## 2. Custom of Filing Controlled-Substance Charges Without Any Scientific Confirmation

75. The office filed and maintained possession charges based solely on handwritten marker labels on packaging, without requiring laboratory or field testing. This custom produced the unsupported clonazepam charge (never submitted, never tested, maintained 12+ months after the laboratory report omitted it entirely).

## 3. Custom of Incorporating Police Narratives Without Reviewing Available Recordings

76. The office accepted Officer Ramirez's narrative (and Investigator Cantu's sworn complaint) without reviewing the dashcam recording maintained by the same department. The recording directly contradicted every material fabrication. The same custom allowed video-contradicted reports in the McAllen PD case and identical-script Pedroza cases to proceed unchecked.

Civil Action No. 7:26-cv-_____

### 4. Custom of No Cross-Case or Cross-Agency Pattern Analysis

77. Despite prosecuting twenty-three Pedroza cases with identical language, filing three deficient cases against the same defendant in nineteen days, and receiving repeated notice of deficiencies, the office maintained no tracking system for problematic officers, repeated defendants, or recurring factual mismatches.

### 5. Custom of Maintaining Charges Despite Contradictory Evidence in the Office's Possession

78. The office continued the fabricated felony and unsupported clonazepam charges for over a year even after possessing the laboratory report that disproved both. The same custom allowed the 2026 reindictment to use the dismissed fabricated felony as a false tolling predicate.

### 6. Safeguards the Hidalgo County District Attorney's Office Failed to Implement

79. The following minimal safeguards—all readily available and routinely used by competent prosecutorial offices—were never implemented despite years of notice:

- Laboratory-result reconciliation (compare charged weight/substance to report before indictment);

- Mandatory scientific confirmation before filing any controlled-substance charge;

- Review of available dashcam or bodycam recordings before accepting police narratives;

- Internal-consistency checks (e.g., does the weight in the report match the charged offense?);

- Cross-case flagging for the same defendant or same officer;

- Dismissal or correction protocols when evidence in the file contradicts the charge.

80. None of these safeguards required new resources or expert analysis. Their complete absence, despite the Pedroza pattern, the loperamide charge, the weight fabrication here, and the

21

clonazepam non-testing, constitutes deliberate indifference.

**7. Causation: The District Attorney's Custom as the Moving Force Behind Plaintiff's Constitutional Injuries**

81. The office's customs were the direct moving force behind every constitutional violation in this case. Had the office required laboratory verification, the fabricated felony weight would never have been indicted. Had it required scientific confirmation, the clonazepam charge would never have been filed. Had it reviewed the available dashcam, the Ramirez/Cantu fabrications would have been caught. Had it maintained cross-case tracking, the accumulation of three deficient prosecutions against Plaintiff in nineteen days would have triggered review. Instead, the customs produced the charges, the plea coercion, the felony stigma, and the ongoing injury from the false tolling allegation in the January 2026 reindictment.

82. Under *Monell*, *Connick v. Thompson*, and *Chiaverini v. City of Napoleon*, the Hidalgo County District Attorney's Office is liable for the distinct harms flowing from each fabricated charge.

**H. Fraudulent Concealment**

83. The statute of limitations for each of Plaintiff's claims—including the *Monell* claim against Defendant Palacios—was tolled by Defendants' fraudulent concealment.

84. **The Weslaco Police Department Defendants' concealment.** Officer Ramirez prepared a narrative report containing fabricated statements of fact and material omissions, and Investigator Cantu incorporated those fabrications into sworn charging documents attesting to their truth. Together, these fabricated official documents concealed the constitutional violations underlying Plaintiff's arrest. The dashcam recording that would reveal the fabrications was in the exclusive possession of the Weslaco Police Department. Plaintiff experienced the traffic stop firsthand and knew the facts of the encounter as he lived them—but he could not

Civil Action No. 7:26-cv-_____

know that Officer Ramirez had fabricated a contradictory account in the official record until
he obtained and compared the written reports against the dashcam recording.

85. The effectiveness of Officer Ramirez's concealment is demonstrated by its effect on Plain-
tiff himself. When Plaintiff first obtained and reviewed Officer Ramirez's reports on June
20, 2025, Plaintiff—who had personally experienced the encounter—initially accepted the
officer's written account as accurate. Plaintiff did not know that the dashcam system had
recorded audio of the interaction. It was not until Plaintiff reviewed the dashcam recording
and discovered that it captured the full audio of the encounter that the fabrications became
apparent. The fact that even the person who lived through the traffic stop was initially de-
ceived by the fabricated official record demonstrates both that the concealment was an affir-
mative act designed to mislead and that a reasonable person exercising due diligence would
not have discovered the fabrications from the written reports alone.

86. Investigator Cantu's sworn complaint and affidavit for arrest warrant are themselves affir-
mative acts of concealment. Plaintiff was entitled to rely on the facial accuracy of sworn
law enforcement documents. A reasonable person does not audit police reports for fabrica-
tions. The fabrication of official documents to construct a false narrative of the encounter
constitutes an affirmative act designed to conceal the underlying constitutional violations.

87. **The ADA Defendants' concealment.** The felony indictment alleging methylphenidate in
an amount of "28 grams or more" is an affirmative misrepresentation in a sworn document
returned by a grand jury. Plaintiff was entitled to rely on the facial accuracy of a grand jury
indictment. A reasonable person presented with a felony indictment does not independently
verify whether the weight alleged by the prosecuting authority is consistent with the labo-
ratory report. The indictment itself is the affirmative act of concealment—it represented to
Plaintiff, the court, and all parties that the weight exceeded the felony threshold when the
laboratory confirmed it did not.

88. **Tolling of the Monell claim.** The *Monell* claim against Defendant Palacios is derivative

of the same underlying constitutional violations concealed by the individual Defendants' fabricated documents. The custom of filing without verification produced the fabricated charges; fabricated documents concealed both the individual violations and the institutional custom that caused them. Plaintiff could not have discovered the custom—or its role in producing the fabricated charges—until he discovered the fabrications themselves. The *Monell* claim is therefore subject to the same fraudulent concealment tolling as the individual claims.

89. Plaintiff did not discover the fabrications underlying his claims until June 20, 2025, when he first obtained the case file from former counsel and when he first reviewed materials including Officer Ramirez's reports and the dashcam recording. Plaintiff's discovery of the fabricated felony weight was further confirmed on January 8, 2026, when the District Attorney's Office filed the new indictment identifying the weight as less than 28 grams—directly contradicting the original indictment's allegation of 28 grams or more.

90. The same fraudulent concealment applies to the unlawful search of Plaintiff's person. Officer Ramirez conducted a full pat-down without consent or reasonable suspicion, then deliberately omitted any mention of that search from his narrative report while detailing every other aspect of the encounter. Investigator Cantu repeated the fabricated "furtive movements" justification in the sworn complaint without ever disclosing the pat-down itself. These omissions and fabrications concealed the absence of any lawful basis for the search of Plaintiff's person until Plaintiff viewed the dashcam recording on June 20, 2025 and compared it to the official reports.

91. Under the discovery rule, the two-year statute of limitations runs from June 20, 2025—the date Plaintiff discovered the fabrications. This complaint is timely filed within that period.

Civil Action No. 7:26-cv-____

## V. CLAIMS FOR RELIEF

### A. Count I: 42 U.S.C. § 1983—Fabrication of Evidence (Fourth and Fourteenth Amendments) (Against Officer Ramirez and Investigator Cantu)

92. Plaintiff incorporates by reference all preceding paragraphs.

93. Officer Ramirez, acting under color of state law, fabricated material statements of fact in his narrative report—including false claims that Plaintiff refused eye contact, was very nervous, made furtive movements with his hands, that Plaintiff's passenger was answering all questions, and that there was visible smoke exiting the vehicle—and materially omitted the smoke/vaping exchange, the drinking inquiry, and Plaintiff's presentation of a prescription. Each fabrication and omission is contradicted or revealed by Officer Ramirez's own dashcam recording.

94. Investigator Cantu, acting under color of state law, incorporated these same fabrications into a sworn criminal complaint and affidavit for arrest warrant, attesting under oath to their truth as his own personal beliefs. Cantu was not present during the encounter and had no firsthand knowledge of the events he swore to. The pronoun inconsistencies in the sworn complaint demonstrate that Cantu did not independently review the narrative before swearing to it. The dashcam recording that would have revealed every fabrication was maintained by Cantu's own department and available to him. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a sworn affiant who attests to fabricated facts with reckless disregard for their truth violates the Fourth Amendment.

95. Under *Franks*, the sworn charging documents—with fabrications excised and omissions restored—do not establish probable cause for Plaintiff's arrest.

96. Officer Ramirez's fabrication of the source narrative and Investigator Cantu's sworn attestation to its truth violated Plaintiff's rights under the Fourth Amendment (freedom from

25

unreasonable seizure based on fabricated probable cause) and the Fourteenth Amendment (due process right not to be deprived of liberty through fabricated evidence).

97. No reasonable officer could believe it lawful to fabricate statements of fact in reports used to support criminal charges, nor to swear under oath to another officer's account without reviewing readily available evidence contradicting that account. The right to be free from fabricated evidence in support of a seizure was clearly established at the time of each Defendant's conduct. Qualified immunity does not apply to either Officer Ramirez or Investigator Cantu.

## B. Count II: 42 U.S.C. § 1983—Unlawful Arrest (Fourth Amendment) (Against Officer Ramirez and Investigator Cantu)

98. Plaintiff incorporates by reference all preceding paragraphs.

99. Officer Ramirez arrested Plaintiff based on probable cause derived from a search of Plaintiff's vehicle. The search was premised on consent obtained after Officer Ramirez abandoned the mission of the traffic stop—enforcement of the alleged unsafe lane change—and instead conducted an investigatory drug inquiry, without issuing any citation or warning for the underlying traffic infraction.

100. Even assuming the consent to search was voluntary, the arrest was effectuated based on sworn charging documents containing fabricated facts and material omissions as set forth in Count I. Officer Ramirez fabricated the underlying narrative; Investigator Cantu laundered those fabrications into a sworn instrument that secured judicial authorization for the arrest. The arrest therefore lacked legitimate probable cause and violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

101. Plaintiff was detained at the Weslaco City Jail for approximately one day, required to post bond of $50,000, and had his vehicle towed and impounded as a direct result of the unlawful arrest.

26

Civil Action No. 7:26-cv-_____

## C. Count III: 42 U.S.C. § 1983—Unlawful Extension of Traffic Stop (Fourth Amendment) (Against Officer Ramirez)

102. Plaintiff incorporates by reference all preceding paragraphs.

103. In the alternative, under *Rodriguez v. United States*, 575 U.S. 348 (2015), Officer Ramirez unlawfully extended the traffic stop beyond the time reasonably necessary to complete the mission of the stop.

104. The mission of the traffic stop was enforcement of the alleged unsafe lane change. Officer Ramirez never completed this mission—no citation or written warning was ever issued, and none exists in the record.

105. Rather than completing the mission, Officer Ramirez conducted an unrelated drug investigation: he initiated an extended exchange about smoke and vaping based on a fabricated claim of visible smoke, asked whether Plaintiff had been drinking, asked whether there was anything illegal in the vehicle, and requested consent to search—all before completing the routine tasks of the traffic stop.

106. Officer Ramirez's sole articulated basis for suspicion—his claim of observing smoke—was contradicted by his own dashcam video and yielded no evidence of criminal activity. Officer Ramirez acknowledged on dashcam audio that the substance was not illegal. The drinking inquiry yielded a denial. No other basis for reasonable suspicion of criminal activity existed at the time Officer Ramirez requested consent to search.

107. The consent to search was obtained during a detention that had exceeded its lawful scope. Consent obtained during an unlawful detention is presumptively involuntary and constitutes fruit of the poisonous tree under *Florida v. Royer*, 460 U.S. 491 (1983), and *Wong Sun v. United States*, 371 U.S. 471 (1963).

108. All evidence obtained as a result of the unlawful search, and the arrest premised thereon, violated Plaintiff's Fourth Amendment rights.

**D. Count IV: 42 U.S.C. § 1983—Fabrication of Evidence and Malicious Prosecution (Four-teenth and Fourth Amendments) (Against Defendant Doe #2—Fabricated Felony Weight)**

109. Plaintiff incorporates by reference all preceding paragraphs.

110. Defendant Doe #2, acting under color of state law, presented to the Hidalgo County grand jury a felony indictment alleging Plaintiff possessed methylphenidate in an amount of 28 grams or more but less than 200 grams. The DPS Crime Laboratory report, issued six months prior to the indictment and in the District Attorney's possession, confirmed the weight as 22.48 grams—5.52 grams below the 28-gram felony threshold.

111. Doe #2 selectively used the laboratory report for substance identification while fabricating the weight element from the same document. This constitutes fabrication of the factual predicate for a felony charge—converting what the evidence established as a Class A misde-meanor into a third-degree felony.

112. This conduct is not prosecutorial advocacy protected by absolute immunity. Fabricating a factual element of a charged offense is investigative and administrative conduct subject only to qualified immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993); *Kalina v. Fletcher*, 522 U.S. 118 (1997).

113. No reasonable prosecutor could believe it lawful to present a felony indictment alleging a weight of 28 grams or more when the laboratory report in the prosecutor's file confirms 22.48 grams. Presenting an indictment based on a factual element (weight) that the prosecutor knew or should have known was false because the laboratory report in the file established the true weight is not advocacy about how to characterize known facts—it is the creation of a false factual predicate, which is investigative conduct. This is not a close judgment call susceptible to qualified immunity—it is a binary factual question (is 22.48 greater than or equal to 28?) with an unambiguous answer. Qualified immunity does not apply.

114. The fabricated felony was maintained from approximately July 2023 through January 29,

2024, when it was dismissed as part of a plea agreement. The charge terminated in Plaintiff's favor without conviction under *Thompson v. Clark*, 596 U.S. 36 (2022).

115. Doe #2's conduct violated Plaintiff's Fourteenth Amendment right to due process (deprivation of liberty through fabricated evidence) and Fourth Amendment right to be free from malicious prosecution without probable cause.

## E. Count V: 42 U.S.C. § 1983—Unlawful Search of Person (Fourth Amendment) (Against Officer Ramirez)

116. Plaintiff incorporates by reference all preceding paragraphs.

117. After Plaintiff exited his vehicle and before Plaintiff was placed under arrest, Officer Ramirez directed Plaintiff to turn around with his hands raised, searched Plaintiff's pockets, and conducted a full pat-down of Plaintiff's person without obtaining consent to search Plaintiff's person. Plaintiff had consented only to a search of his vehicle.

118. Consent to search a vehicle does not constitute consent to search the vehicle's occupants. A warrantless search of a person requires either independent consent to search the person, reasonable suspicion that the person is armed and dangerous under *Terry v. Ohio*, 392 U.S. 1 (1968), or a lawful basis for a search incident to arrest. None of these existed at the time Officer Ramirez searched Plaintiff's person. The pat-down occurred before any arrest, so it cannot be justified as a search incident to arrest.

119. Officer Ramirez's sole purported basis for believing Plaintiff might be armed—the claim of "furtive movements"—is a fabrication contradicted by the dashcam recording as set forth in Subsection B. With the fabricated basis removed, no reasonable suspicion that Plaintiff was armed and dangerous existed at the time of the pat-down.

120. The selective nature of the search further undermines any officer-safety justification. Officer Ramirez searched only Plaintiff and did not pat down Plaintiff's passenger, despite both

occupants having been present in the same vehicle during the alleged furtive movements. A genuine safety concern arising from movements inside the vehicle would have prompted a reasonable officer to pat down both occupants. The decision to search only Plaintiff demonstrates that the pat-down was investigatory rather than protective.

121. The warrantless search of Plaintiff's person, conducted without consent, without legitimate reasonable suspicion, and before any lawful arrest, violated Plaintiff's Fourth Amendment right to be free from unreasonable searches.

122. The fabrication of "furtive movements" in Officer Ramirez's narrative report served a specific functional purpose: to retroactively justify this otherwise unjustifiable warrantless search. The connection between the fabrication and the unlawful search demonstrates that the false statement was not gratuitous but calculated to conceal a constitutional violation Officer Ramirez knew he had committed.

## F. Count VI: 42 U.S.C. § 1983—Fabrication of Evidence and Malicious Prosecution (Fourteenth and Fourth Amendments) (Against Defendant Doe #1—Unsupported Clonazepam Charge)

123. Plaintiff incorporates by reference all preceding paragraphs.

124. Defendant Doe #1, acting under color of state law, signed and filed a criminal complaint on December 7, 2022, charging Plaintiff with possession of clonazepam—a substance that had never been submitted for laboratory testing, had never been field tested (no field testing records exist), and had never been confirmed by any scientific method to be a controlled substance.

125. The sole basis for the charge was a handwritten marker label on a package of pills purchased in Mexico. Filing a criminal charge for possession of a controlled substance without any scientific confirmation that the substance is a controlled substance constitutes fabrication of the evidentiary basis for the charge.

Civil Action No. 7:26-cv-_____

126. After the DPS laboratory report was issued on January 20, 2023—listing only methylphenidate and containing no reference to clonazepam—Doe #1 (or the District Attorney's Office) was on notice that no laboratory confirmation of the clonazepam charge existed or was forthcoming. The charge was maintained for an additional twelve months without any effort to obtain scientific confirmation.

127. This conduct is investigative and administrative, not prosecutorial advocacy, and is subject only to qualified immunity under *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993). Filing a charge based on a substance that had never been scientifically tested is not a discretionary charging decision about how to apply law to facts—it is the initiation of prosecution without any factual basis for the elemental fact that the substance was a controlled substance, which is administrative/investigative conduct. No reasonable prosecutor could believe it lawful to file and maintain a controlled substance charge for a substance that has never been scientifically identified. Qualified immunity does not apply.

128. The unsupported clonazepam charge was maintained from December 7, 2022 through January 29, 2024, when it was dismissed as part of a plea agreement. The charge terminated in Plaintiff's favor without conviction under *Thompson v. Clark*, 596 U.S. 36 (2022).

129. Doe #1's conduct violated Plaintiff's Fourteenth Amendment right to due process and Fourth Amendment right to be free from malicious prosecution without probable cause.

## G. Count VII: 42 U.S.C. § 1983—Malicious Prosecution (Fourth Amendment) (Against All Individual Defendants)

130. Plaintiff incorporates by reference all preceding paragraphs.

131. Under *Thompson v. Clark*, 596 U.S. 36 (2022), and *Chiaverini v. City of Napoleon*, 602 U.S. ___ (2024), each Defendant initiated or maintained criminal charges against Plaintiff that lacked probable cause:

31

- Officer Ramirez initiated the prosecution by fabricating the narrative report, and Investigator Cantu swore to those fabrications in the criminal complaint and arrest warrant affidavit, without which probable cause for the arrest and subsequent charges would not have existed.

- Defendant Doe #1 filed the clonazepam charge without any scientific confirmation that the substance was a controlled substance.

- Defendant Doe #2 presented the felony indictment with a fabricated weight element, converting a misdemeanor into a felony.

132. Each charge independently lacked probable cause under *Chiaverini*. The fabricated felony lacked probable cause because the laboratory-confirmed weight was below the felony threshold. The clonazepam charge lacked probable cause because the substance was never confirmed as a controlled substance.

133. All charges terminated in Plaintiff's favor without conviction on January 29, 2024.

134. Defendants' conduct violated Plaintiff's Fourth Amendment right to be free from malicious prosecution.

## H. Count VIII: 42 U.S.C. § 1983—Municipal Liability Under *Monell* (Against Defendant Palacios in His Official Capacity)

135. Plaintiff incorporates by reference all preceding paragraphs.

136. Defendant Palacios, as the elected District Attorney for Hidalgo County, is the final policymaker for the Hidalgo County District Attorney's Office. He is sued in his official capacity for the customs and practices of the office that were the moving force behind the constitutional violations Plaintiff suffered.

137. The Hidalgo County District Attorney's Office maintained a custom of filing and presenting criminal charges without verifying that the evidence in its own possession supported the

charged offense. This custom is demonstrated by:

- The fabricated felony weight in this case—presenting a felony indictment alleging $\geq 28$ grams when the laboratory report confirmed 22.48 grams;

- The unsupported clonazepam charge in this case—filing a controlled substance charge for a substance never confirmed by any scientific method;

- The loperamide charge filed August 31, 2023—charging possession of a legal over-the-counter medication despite laboratory results confirming the substance;

- The McAllen PD case filed September 18, 2023—incorporating video-contradicted fabrications without review;

- The Pedroza pattern spanning May 2017 through August 2024—prosecuting twenty-three cases containing verbatim identical language across unrelated suspects despite notice through suppression motions, dismissals, declinations to prosecute, and a judicial finding of lack of probable cause.

138. The office implemented no laboratory result review procedures, no substance verification protocols, no charge-to-evidence comparison requirements, no video review procedures, and no cross-case pattern analysis—despite years of notice that the absence of such safeguards was producing constitutional violations.

139. This custom was the moving force behind the constitutional violations in this case. Had the office compared the charged weight against the laboratory-confirmed weight, the fabricated felony would not have been filed. Had the office required scientific confirmation before filing controlled substance charges, the clonazepam charge would not have been filed.

140. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *Connick v. Thompson*, 563 U.S. 51 (2011), the District Attorney's Office's deliberate indifference to the known risk of constitutional violations—demonstrated by the persistent failure to implement basic verification safeguards despite repeated notice—establishes municipal liability.

141. Under *Chiaverini v. City of Napoleon*, 602 U.S. ___ (2024), each fabricated charge independently lacked probable cause as a result of this custom, and the office is liable for the distinct harms arising from each charge—including the felony stigma from the fabricated weight, the charge-stacking coercion from the unsupported clonazepam charge, and the cascading harm from the false tolling allegation premised on the fabricated felony.

## VI. DAMAGES

142. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages:

### A. Economic Damages

143. **Ongoing Employment Discrimination:** The permanent arrest record created by Defendants' unlawful conduct continues to cause Plaintiff to fail employment background checks, resulting in ongoing economic harm.

144. **Future Diminished Earning Capacity:** The permanent arrest record will continue to subject Plaintiff to employment discrimination for the remainder of his working life, diminishing his lifetime earning capacity. The present value of this diminishment will be established through expert testimony.

145. **Legal Fees and Costs:** All fees and costs incurred defending against the criminal charges stemming from Defendants' conduct, including attorney's fees and court costs.

146. **Medical and Mental Health Treatment Costs:** Past and future costs for mental health treatment necessitated by the trauma of unlawful arrest, fabricated evidence, and prolonged detention.

147. **Financial Harm from Arrest and Detention:** Plaintiff was required to post bond of $50,000. Plaintiff's vehicle was towed and impounded. Plaintiff incurred costs associated with securing his release and recovering his property.

Civil Action No. 7:26-cv-_____

## B. Non-Economic Damages

148. **Unlawful Search of Person:** Before placing Plaintiff under arrest and before conducting the vehicle search, Officer Ramirez subjected Plaintiff to a warrantless pat-down and pocket search without consent, without reasonable suspicion, and without any lawful basis. The physical intrusion of a nonconsensual search of Plaintiff's person constitutes an independent Fourth Amendment injury.

149. **Unlawful Arrest and Detention:** Plaintiff was arrested without legitimate probable cause and detained at the Weslaco City Jail for approximately one day as a direct result of Officer Ramirez's unlawful arrest. The arrest itself—effectuated without legitimate probable cause based on fabricated reports and sworn charging documents—constitutes a standalone Fourth Amendment injury.

150. **Plea Coercion:** The fabricated felony charge and the unsupported clonazepam charge were both maintained as plea leverage and explicitly dismissed as part of a January 29, 2024 plea agreement in an unrelated case. Two fabricated charges—one a third-degree felony carrying 2–10 years imprisonment, the other a Class A misdemeanor—were aggregated with other charges to maximize pressure on Plaintiff to accept a plea. Plaintiff's guilty plea was subsequently vacated as involuntary by the 389th Judicial District Court on December 17, 2025. The fabricated charges contributed to the coercive environment that produced the involuntary plea.

151. **Stigma and Reputational Harm:** Plaintiff was charged with a third-degree felony when the evidence supported, at most, a Class A misdemeanor. The stigma of a felony charge—including its effects on employment, housing, and personal reputation—exceeds that of a misdemeanor charge. Plaintiff bore this unjustified stigma for approximately eighteen months. The arrest record appears on background check databases, public court records, and internet searches, creating permanent reputational injury.

152. **Cascading Constitutional Harm:** The fabricated felony indictment continues to generate constitutional injuries beyond its dismissal. In January 2026, the District Attorney's Office used the dismissed felony as the basis for a false tolling allegation in a new manufacture/delivery indictment, subjecting Plaintiff to a new criminal prosecution premised on the original fabrication.

153. **Mental Anguish and Emotional Distress:** Severe psychological trauma including anxiety, depression, hypervigilance, intrusive thoughts, and diagnosed Unspecified Trauma and Stressor Related Disorder directly caused by the unlawful arrest, evidence fabrication, and prolonged detention. Because Defendants' fabrication of evidence concealed the true nature of the misconduct, Plaintiff did not understand the cause of his psychological injuries until June 20, 2025, when the dashcam recording revealed the fabrications. Plaintiff continues to suffer these injuries as a direct result of Defendants' misconduct.

154. **Humiliation and Degradation:** Humiliation from public arrest, booking process, and ongoing requirement to disclose arrest to potential employers.

## C. Aggravated Damages

155. The unlawful search of Plaintiff's person—conducted without consent, without reasonable suspicion, and deliberately omitted from official reports—was an independent constitutional violation aggravated by Officer Ramirez's subsequent fabrication of "furtive movements" to retroactively justify it. This calculated cover-up warrants aggravated and punitive damages.

156. The fabrication of the felony weight element by Defendant Doe #2—selectively using the DPS laboratory report for substance identification while rejecting the weight determination from the same document to convert a Class A misdemeanor into a third-degree felony—was deliberate, not inadvertent, and warrants aggravated and punitive damages.

157. The filing and twelve-month maintenance of the unsupported clonazepam charge by Defendant Doe #1—based solely on a handwritten marker label, without any scientific confirma-

tion, and continued for twelve months after the laboratory report confirmed no clonazepam had ever been submitted—demonstrates deliberate indifference to Plaintiff's constitutional rights and warrants aggravated and punitive damages.

## VII.  JURY DEMAND

158.  Plaintiff demands a trial by jury on all issues so triable.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angel Adalberto Alanis Jr. respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

(a) **Compensatory Damages:** Compensatory damages against all Defendants, jointly and severally, for all economic and non-economic injuries alleged herein, including lost income, lost employment opportunities, diminished earning capacity, medical expenses, loss of liberty, financial harm from arrest and detention, mental anguish, humiliation, stigma, plea coercion, and cascading constitutional harm;

(b) **Nominal Damages:** In the alternative, nominal damages of one dollar ($1.00) for each constitutional violation proven, to vindicate Plaintiff's clearly established constitutional rights;

(c) **Punitive Damages:** Punitive damages against Defendants Ramirez, Cantu, Doe #1, and Doe #2 in their individual capacities, for their deliberate, reckless, and callous indifference to Plaintiff's clearly established constitutional rights, in an amount sufficient to punish this misconduct and deter similar future violations;

(d) **Injunctive Relief Against Defendant Palacios:** An order requiring Toribio Palacios, in his official capacity as District Attorney for Hidalgo County, to implement reforms to prevent future constitutional violations, including:

- Mandatory laboratory result reconciliation—comparing the charged weight, substance, and penalty group classification against the laboratory report—before presenting any indictment or filing any criminal complaint for a controlled substance offense;

- Mandatory scientific confirmation, by laboratory analysis or validated field test, before filing any charge for possession of a controlled substance;

- Mandatory review of available dashcam, bodycam, or other law enforcement recordings before accepting police narratives into charging instruments;

- Internal-consistency verification procedures requiring that factual allegations in charging instruments be reconciled against evidence in the prosecutor's file before filing;

- Cross-case flagging systems for identifying patterns involving the same defendant, the same officer, or recurring factual deficiencies across cases;

- Dismissal or correction protocols requiring prompt action when evidence in the office's possession contradicts the factual basis of a pending charge;

(e) **Declaratory Judgment:** A declaratory judgment that Defendants violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution;

(f) **Pre-Judgment and Post-Judgment Interest:** Interest on all monetary awards at the maximum rate allowed by law pursuant to 28 U.S.C. § 1961;

(g) **Attorneys' Fees and Costs:** Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and costs of court pursuant to 28 U.S.C. § 1920;

(h) **Leave to Amend:** Leave to amend this Complaint as further information is revealed through discovery or continued evaluation;

(i) **General Relief:** Such other and further relief as this Court deems just and equitable.

Civil Action No. 7:26-cv-____

Respectfully submitted,

Angel Adalberto Alanis Jr.

1107 N Bethel St

Roma, TX 78584

(956) 379-8874

a4alaniz@gmail.com

*Pro Se* Plaintiff

## VERIFICATION

I, Angel Adalberto Alanis Jr., verify under penalty of perjury under the laws of the United States that the foregoing complaint is true and correct to the best of my knowledge, information, and belief.

ANGEL ADALBERTO ALANIS JR.

Date: 2/26/2026