Civil Action No. 7:26-cv-_____

## EXHIBIT A

## PLAINTIFF'S PROPOSED FIRST AMENDED COMPLAINT

Attached hereto is Plaintiff's Proposed First Amended Complaint, submitted in support of the foregoing Motion for Leave.

Civil Action No. 7:26-cv-____

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### MCALLEN DIVISION

Civil Action No. 7:26-cv-_____

ANGEL ADALBERTO ALANIS JR.,

      Plaintiff,                                   Civil Action No. 7:26-cv-_____

v.

Officer PABLO RAMIREZ, Badge No. C-10,
in his individual capacity,

Investigator LEONEL CANTU JR.,
in his individual capacity,

JOHN DOE #1, Assistant District Attorney
for the Hidalgo County District
Attorney's Office,
in his individual capacity,

JOHN DOE #2, Assistant District Attorney
for the Hidalgo County District
Attorney's Office,
in his individual capacity,

JOHN DOE #3, Assistant District Attorney
for the Hidalgo County District
Attorney's Office,
in his individual capacity,

Toribio PALACIOS, District Attorney
for Hidalgo County, Texas,
in his official capacity,

Civil Action No. 7:26-cv-____

## FIRST AMENDED COMPLAINT

### (42 U.S.C. § 1983)

### NATURE OF ACTION

This is a civil rights action under 42 U.S.C. § 1983 arising from fabricated police reports and sworn charging documents, fabricated criminal charges, and a malicious prosecution conducted by a Weslaco Police Department officer and assistant district attorneys of the Hidalgo County District Attorney's Office.

On September 2, 2022, Officer Pablo Ramirez of the Weslaco Police Department conducted a traffic stop on Plaintiff's vehicle at approximately 3:21 a.m. Officer Ramirez's in-car dashcam recorded the entire encounter. During the stop, Plaintiff was calm, cooperative, made eye contact with the officer, and personally answered every question posed. Officer Ramirez subsequently prepared a narrative report containing fabricated statements—that Plaintiff "refused to make any eye contact," was "very nervous," made "a lot of furtive movements with his hands," and that Plaintiff's passenger "was answering all the questions." Each of these statements is contradicted by the officer's own dashcam video and audio. Investigator Leonel Cantu Jr., who was not present during the encounter, then incorporated these same fabrications into a sworn criminal complaint and affidavit for arrest warrant—attesting under oath to their truth without reviewing the available dashcam recording.

The Weslaco Police Department seized four categories of pills from Plaintiff's vehicle but submitted only one—177 pills later confirmed as methylphenidate—to the DPS Crime Laboratory for testing. The laboratory confirmed the substance was methylphenidate weighing 22.48 grams. No other seized substance was ever scientifically tested or confirmed as a controlled substance.

Despite possessing these laboratory results, the Hidalgo County District Attorney's Office filed two fabricated charges: (1) a felony indictment for Possession of a Controlled Substance, Penalty Group 3, in an amount of 28 grams or more but less than 200 grams—when the labora-

3

tory confirmed only 22.48 grams, a weight corresponding to a Class A misdemeanor—and (2) a misdemeanor charge for possession of clonazepam, a substance that was never submitted to any laboratory and never confirmed by any scientific method to be a controlled substance. Both fabricated charges were maintained for over a year and used as plea leverage in a negotiated disposition on January 29, 2024. Plaintiff's plea was subsequently vacated as involuntary on December 17, 2025. In response, the District Attorney's Office obtained a new indictment on or about January 8, 2026, charging Plaintiff with Possession with Intent to Deliver—an offense requiring proof of intent to manufacture or deliver—based on the same evidence that supported, at most, simple possession. No evidence of intent to manufacture or deliver has ever existed in the case file. The Manufacture or Delivery charge was dismissed on March 2, 2026.

Plaintiff seeks compensatory and punitive damages against the individual Defendants and asserts municipal liability against Defendant Palacios in his official capacity under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the customs and policies of the Hidalgo County District Attorney's Office that produced these fabricated charges.

## I. JURISDICTION AND VENUE

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983.

2. Venue is proper under 28 U.S.C. § 1391(b) because all events giving rise to these claims occurred in Hidalgo County, Texas, within the Southern District of Texas, McAllen Division.

3. Plaintiff Angel Adalberto Alanis Jr. is a resident of Starr County, Texas, and was at all relevant times lawfully present in Hidalgo County, Texas.

4. Defendant Officer Pablo Ramirez, Badge No. C-10, is and was at all relevant times a police officer employed by the Weslaco Police Department, acting under color of state law. He conducted the traffic stop and arrest of Plaintiff on September 2, 2022, and prepared the

Civil Action No. 7:26-cv-____

narrative report forming the basis of the arrest and subsequent charging instruments. He is sued in his individual capacity for damages.

5. Defendant Investigator Leonel Cantu Jr. is and was at all relevant times a peace officer and investigator employed by the Weslaco Police Department, acting under color of state law. Although not present during the traffic stop or arrest, he authored and swore under oath to the criminal complaint and affidavit for arrest warrant, incorporating Officer Ramirez's narrative report and attesting to its truth. He is sued in his individual capacity for damages.

6. Defendant John Doe #1 is and was at all relevant times an Assistant District Attorney employed by the Hidalgo County District Attorney's Office, acting under color of state law. On December 7, 2022, Doe #1 signed and filed a criminal complaint charging Plaintiff with possession of clonazepam without laboratory confirmation that the substance was a controlled substance. Doe #1 is sued in his individual capacity for damages.

7. Defendant John Doe #2 is and was at all relevant times an Assistant District Attorney employed by the Hidalgo County District Attorney's Office, acting under color of state law. During the July 2023 term of the 92nd Judicial District Court, Doe #2 presented to the grand jury a felony indictment alleging possession of methylphenidate in an amount of 28 grams or more, despite a DPS Crime Laboratory report confirming a weight of 22.48 grams, below the felony threshold. Doe #2 is sued in his individual capacity for damages.

8. Defendant John Doe #3 is and was at all relevant times an Assistant District Attorney employed by the Hidalgo County District Attorney's Office, acting under color of state law. On or about January 8, 2026, Doe #3 presented to the grand jury an indictment charging Plaintiff with Possession with Intent to Deliver a Controlled Substance, Penalty Group 3, in an amount of less than 28 grams (methylphenidate). That charge was dismissed on March 2, 2026. Doe #3 is sued in his individual capacity for damages.

9. Defendants Doe #1, Doe #2, and Doe #3 may be the same individual or may overlap. Plaintiff

will identify each through discovery and amend this complaint accordingly.

10. Plaintiff will seek leave to amend to identify Doe #1, Doe #2, and Doe #3 by name, and such amendment will relate back to the filing date of this complaint under Fed. R. Civ. P. 15(c)(1)(C) because the Doe Defendants, as employees of the Hidalgo County District Attorney's Office, received notice of this action within the period provided by Rule 4(m) and knew or should have known that this action would have been brought against them but for Plaintiff's inability to identify them by name.

11. Defendant Toribio Palacios is the elected District Attorney for Hidalgo County, Texas. He is sued in his official capacity for damages arising from customs, policies, and practices maintained by the Hidalgo County District Attorney's Office under his supervision and control.

## II. TIMELINESS

12. The two original charges arising from Plaintiff's September 2, 2022 arrest were dismissed on January 29, 2024. Plaintiff's malicious prosecution claims accrued upon favorable termination on that date. Absent tolling, the two-year statute of limitations would have expired on January 29, 2026.

13. This action is timely because the statute of limitations was tolled by Defendants' fraudulent concealment. The factual basis for tolling is set forth in Section IV, Subsection H below.

14. Under the discovery rule as applied through equitable tolling principles, the statute of limitations runs from the date Plaintiff discovered, or through reasonable diligence should have discovered, the constitutional violations underlying his claims. Plaintiff did not discover the relevant fabrications until on or after June 20, 2025. This complaint, filed within two years of that discovery, is timely as to all claims arising from the 2022 arrest and prosecution.

15. To the extent Plaintiff's Fourth Amendment false arrest claim accrued upon detention pursuant to legal process under *Wallace v. Kato*, 549 U.S. 384 (2007), the limitations period was

independently tolled by the same fraudulent concealment. The narrative report and sworn charging documents forming the basis of legal process concealed the constitutional defects underlying the arrest, and Plaintiff did not obtain those materials or the dashcam footage revealing the discrepancies until on or after June 20, 2025.

16. Plaintiff's claims arising from the January 8, 2026 Manufacture or Delivery indictment accrued upon dismissal of that charge on March 2, 2026. This complaint is filed within two years of that date and is timely as to those claims without the need for tolling analysis.

17. Plaintiff's *Monell* claim against Defendant Palacios in his official capacity is derivative of the underlying constitutional violations committed by the individual Defendants. Those violations—including the January 8, 2026 indictment—were produced by the Hidalgo County District Attorney's Office's custom of filing and maintaining felony charges without evidentiary verification. The January 8, 2026 indictment and its dismissal on March 2, 2026 constitute a fresh constitutional injury directly traceable to that custom.

18. In the alternative, the *Monell* claim is subject to the same fraudulent concealment tolling applicable to the individual claims. The charging instruments and related practices concealed both the individual constitutional violations and the existence of the institutional custom itself. Plaintiff could not reasonably have discovered the custom's role until he discovered the underlying fabrications on or after June 20, 2025.

## III. FACTUAL ALLEGATIONS

### A. The Traffic Stop

19. On September 2, 2022, at approximately 3:21 a.m., Officer Pablo Ramirez of the Weslaco Police Department initiated a traffic stop on Plaintiff's vehicle—a white 2021 Kia K5—on or near a frontage road in Weslaco, Texas, for an alleged unsafe lane change.

20. Officer Ramirez's fully marked patrol unit was equipped with an in-car dashcam system that

recorded both video and audio of the entire encounter. The dashcam recording captures the interaction at Plaintiff's vehicle window, including all dialogue between Officer Ramirez, Plaintiff, and Plaintiff's passenger.

21. Plaintiff immediately provided his insurance documents upon contact. When Officer Ramirez requested his driver's license, Plaintiff explained that he did not have it in his physical possession but could locate a photograph of it on his phone. Officer Ramirez instructed Plaintiff to search his phone for the license.

22. While Plaintiff was searching his phone for the license photograph, Officer Ramirez initiated a series of questions unrelated to the traffic infraction. The dashcam recording captures the following exchange:

- Officer Ramirez asked Plaintiff where he and his passenger were "coming from." When the passenger began to answer, Officer Ramirez interrupted her, directing the question specifically to Plaintiff: "Sir, sir, where y'all coming from." Plaintiff answered.

- Officer Ramirez asked where they were going. Plaintiff's passenger stated "my house." Plaintiff confirmed and made small talk: "Yes sir, you having a good night."

- Officer Ramirez then stated: "Y'all are smoking out or what?" while gesturing as if waving smoke from his face. He added: "You got smoke coming out of the car." The dashcam video shows no visible smoke exiting the vehicle at any point during the encounter.

- Plaintiff responded: "We're vaping out but that's a big difference." Plaintiff explained that he and his passenger had been using delta-8 and delta-11 vape products, which are legal in Texas.

- Officer Ramirez acknowledged the substance was not illegal, stating: "I'm not saying it's illegal, sir."

8

Civil Action No. 7:26-cv-____

- Officer Ramirez then asked: "Have you been drinking, sir?" Plaintiff responded "No." Officer Ramirez pressed: "At all?" Plaintiff again responded "No."

- Officer Ramirez then asked: "So y'all don't have anything illegal inside the vehicle?" Before Plaintiff could fully respond, Officer Ramirez asked: "Do you give me consent to search your vehicle?" Plaintiff granted permission.

23. At no point during the recorded interaction prior to obtaining consent did Officer Ramirez issue a citation or written warning for the alleged traffic infraction. No citation or warning for the unsafe lane change exists in the record of this case.

24. Officer Ramirez obtained Plaintiff's name and date of birth and relayed the information to dispatch via his radio while Plaintiff was still searching for his license. Dispatch had not returned results at the time Officer Ramirez requested consent to search.

25. After Plaintiff consented to the vehicle search, Officer Ramirez directed Plaintiff to exit the vehicle. Once outside, Officer Ramirez directed Plaintiff to turn around with his hands raised, searched Plaintiff's pockets, and conducted a full pat-down of Plaintiff's person. Officer Ramirez did not ask for or obtain Plaintiff's consent to search his person. Plaintiff had consented only to a search of his vehicle.

26. Officer Ramirez did not pat down or search Plaintiff's passenger, Ninfa Vela, despite both occupants having been present in the same vehicle under the same circumstances.

27. During the search of Plaintiff's vehicle, Officer Ramirez located four packages of pills in a backpack and the center console. Each package bore a handwritten marker label: "Adderall" (177 pills), "Vyvanse" (54 pills), "Clonazepam" (101 pills), and "Xanax" (30 pills). None of the pills were in prescription bottles.

28. Plaintiff claimed ownership of all pills and presented Officer Ramirez with a prescription for the substances. Officer Ramirez disregarded the prescription and left it inside the vehicle.

Civil Action No. 7:26-cv-____

No mention of the prescription appears in Officer Ramirez's narrative report, Investigator Cantu's sworn complaint, or any other document in the case file.

29. Officer Ramirez weighed the substances individually at the Weslaco Police Department:

- "Adderall" (177 pills): 23 grams

- "Vyvanse" (54 pills): 11 grams

- "Clonazepam" (101 pills): 17.1 grams

- "Xanax" (30 pills): 7.7 grams

30. Plaintiff was arrested and transported to the Weslaco City Jail. Bond was set at $50,000. Plaintiff posted bond and was released approximately one day later. Plaintiff's vehicle was towed and impounded.

## B. The Written Reports and Sworn Charging Documents

31. Officer Ramirez prepared a narrative report documenting the traffic stop and arrest. The narrative contains materially false statements of fact that are directly contradicted by the dashcam recording Officer Ramirez himself created. The specific false statements are identified below.

32. Separately, Investigator Leonel Cantu Jr. authored and swore under oath to the criminal complaint and the affidavit for probable cause for arrest warrant. Cantu was not present during the traffic stop. He incorporated the same materially false statements from Ramirez's narrative into these sworn instruments, attesting under oath that he personally had reason to believe and did believe the facts stated therein.

33. The sworn complaint shifts between third-person references to Officer Ramirez and first-person language describing actions Cantu did not perform—including claiming in the first person to have received Plaintiff's consent and conducted the vehicle search. These pronoun inconsistencies appear on the face of the document.

10

Civil Action No. 7:26-cv-_____

34. The dashcam recording was created by Weslaco Police Department equipment, stored on Weslaco Police Department systems, and available to any Weslaco Police Department investigator. Cantu did not review the dashcam recording before swearing under oath to the truth of Ramirez's account.

35. In the separate affidavit for probable cause for arrest warrant, Cantu vouched for Officer Ramirez's credibility and directed the reviewing magistrate to rely on the attached reports—the same reports containing the materially false statements identified below.

36. **False statement: "Angel refused to make any eye contact with Officer Ramirez."** The dashcam video shows Plaintiff making direct eye contact with Officer Ramirez through the vehicle's side-view mirror during the conversation.

37. **False statement: "Ninfa was answering all the questions Officer Ramirez was asking Angel."** The dashcam audio records Plaintiff personally answering every substantive question—where he was coming from, what he was smoking, whether he had been drinking, his name, his date of birth, and whether anything illegal was in the vehicle. Plaintiff's passenger offered one response ("my house") during the entire exchange. Officer Ramirez himself directed questions specifically to Plaintiff, at one point interrupting the passenger: "Sir, sir, where y'all coming from."

38. **False statement: "Angel was very nervous."** The dashcam audio records Plaintiff speaking in a calm, conversational tone throughout the encounter. Plaintiff made small talk with the officer ("you having a good night"), engaged substantively on the vaping question, and responded to all inquiries without audible distress.

39. **False statement: "[Angel] made a lot of furtive movements with his hands."** The dashcam audio records Plaintiff stating that he was searching for his driver's license on his phone—the activity Officer Ramirez had instructed him to perform. When Plaintiff exited the vehicle, the dashcam video shows his cellular phone in his hands. At no point during

11

Civil Action No. 7:26-cv-\_\_\_\_

the recorded interaction did Plaintiff's hands leave the officer's line of sight or move in any manner inconsistent with the phone search Ramirez had directed. At no point during the encounter did Officer Ramirez make any contemporaneous comment about Plaintiff's hand movements, issue any safety instruction such as "keep your hands where I can see them," or take any action indicating concern about Plaintiff's movements. The phrase "furtive move-ments" appeared for the first time in the written report prepared after the encounter. Officer Ramirez had already conducted a warrantless pat-down of Plaintiff's person without consent, as described in Subsection A above.

40. **False verbal statement during the encounter: Claim of visible smoke.** Officer Ramirez stated during the recorded encounter that "You got smoke coming out of the car" and ges-tured as if waving smoke from his face. The dashcam video, recording the exterior view from directly behind the vehicle, shows no visible smoke at any point during the encounter. Officer Ramirez made this statement immediately before pivoting from the traffic stop into a drug-related line of questioning.

41. **Material omission: The smoke and vaping exchange.** Officer Ramirez's narrative report and Investigator Cantu's sworn complaint omit the entire exchange regarding smoke and vaping—an exchange that Officer Ramirez himself initiated. The exchange, captured on dashcam audio, reveals that Officer Ramirez claimed to observe smoke, Plaintiff explained he was vaping a legal substance, and Officer Ramirez acknowledged: "I'm not saying it's illegal, sir." This represented Officer Ramirez's primary pivot from the traffic stop into a drug investigation before he requested consent to search.

42. **Material omission: The drinking inquiry.** Officer Ramirez asked Plaintiff whether he had been drinking. Plaintiff denied it twice. This exchange is omitted from all written reports.

43. **Material omission: Plaintiff's prescription.** Upon arrest, Plaintiff presented Officer Ramirez with a prescription for the seized substances. Officer Ramirez disregarded the prescription and left it inside the vehicle. No mention of the prescription appears in Officer Ramirez's

narrative report, Investigator Cantu's sworn complaint, or any other document in the case file.

44. **The written record compared to the dashcam recording.** The written record—Officer Ramirez's narrative report and Investigator Cantu's sworn complaint—describes a nervous suspect who refused eye contact, made furtive movements with his hands, and whose passenger answered questions directed at him. The dashcam recording shows a calm driver who made eye contact with Officer Ramirez, personally answered every question, scrolled through his phone as instructed, identified the substance he was using as legal, denied alcohol consumption, and presented a prescription before arrest. The written record omits every investigative inquiry that produced no evidence of criminal activity and omits the prescription Plaintiff presented at the scene.

45. The false statements identified above, if excised from the sworn charging documents, and the omitted facts identified above, if restored, would leave a record describing a routine traffic stop in which a calm, cooperative driver answered all questions, denied any illegal activity, identified his vaping substance as legal, denied drinking, consented to a vehicle search, and presented a prescription for the pills found in his vehicle.

## C. The Selective Laboratory Submission

46. Officer Ramirez seized four categories of pills from Plaintiff's vehicle, totaling 362 pills across four substances identified solely by handwritten marker labels on the packaging.

47. On or about October 20, 2022—approximately 48 days after the arrest—the Weslaco Police Department submitted only 177 pills to the Texas Department of Public Safety Crime Laboratory for analysis. The laboratory submission form states "No 2nd Page." No additional submission forms from the Weslaco Police Department exist in the case file for any of the remaining 185 pills.

48. The remaining three categories of pills—labeled "Vyvanse" (54 pills, 11g), "Clonazepam"

Civil Action No. 7:26-cv-_____

(101 pills, 17.1g), and "Xanax" (30 pills, 7.7g)—were never submitted for laboratory testing by any method.

49. On January 20, 2023, the DPS Crime Laboratory issued its report. The 177 submitted pills were confirmed as methylphenidate, a Penalty Group 3 controlled substance, weighing 22.48 grams. No other substance was identified because no other substance was submitted.

50. No field testing records for any of the four categories of seized pills appear in the case file.

51. The identity of the remaining three categories of pills as controlled substances has never been established by any scientific method—neither field presumptive test nor confirmatory laboratory analysis. The sole basis for identifying these substances was the handwritten marker labels on the packaging.

## D. The Prosecutorial Charging Decisions

### 1. The Felony Weight Allegation

52. On or about the July 2023 term of the 92nd Judicial District Court, an Assistant District Attorney for the Hidalgo County District Attorney's Office ("Doe #2") presented to the grand jury—and the grand jury returned—a felony indictment charging Plaintiff with Possession of a Controlled Substance, Penalty Group 3, in an amount of 28 grams or more but less than 200 grams (methylphenidate). The indictment bore cause number CR-4168-23-H.

53. The DPS Crime Laboratory report described in Section IV.C confirmed the substance as methylphenidate weighing 22.48 grams. That report was issued on January 20, 2023— approximately six months before the indictment.

54. The DPS Crime Laboratory report was part of the Hidalgo County District Attorney's Office case file and was available to the prosecuting attorney at the time the felony indictment was presented to the grand jury.

14

55. Under Texas Health and Safety Code § 481.117, possession of a Penalty Group 3 controlled substance in an amount less than 28 grams is a Class A misdemeanor under subsection (b). Possession in an amount of 28 grams or more but less than 200 grams is a third-degree felony under subsection (d). The threshold between misdemeanor and felony classification is 28 grams.

56. The laboratory-confirmed weight was 22.48 grams—5.52 grams below the 28-gram felony threshold. The indictment alleged a weight of "28 grams or more."

57. The indictment relied on the DPS Crime Laboratory report to identify the substance as methylphenidate, a Penalty Group 3 controlled substance. That identification appears on the same page of the same report that establishes the weight as 22.48 grams. The indictment adopted the substance identification from the report and alleged a weight that the same report contradicted. No other laboratory report, field test, or weight determination exists in the case file that would support a weight allegation of 28 grams or more.

## 2. The Clonazepam Charge

58. On December 7, 2022, an Assistant District Attorney for the Hidalgo County District Attorney's Office ("Doe #1") filed a criminal complaint charging Plaintiff with Possession of a Controlled Substance, Penalty Group 3, in an amount of less than 28 grams (clonazepam). The complaint bore cause number CR-22-12280-A.

59. The complaint was sworn to by an affiant—whose identity Plaintiff will confirm through discovery—before Doe #1 in Doe #1's capacity as Assistant Criminal District Attorney. The affiant attested under oath to having "good reason to believe" that Plaintiff possessed clonazepam, a controlled substance. Doe #1 administered the oath, accepted the complaint, and filed it for record.

60. At the time the complaint was sworn and filed, no scientific method—neither field presumptive test nor confirmatory laboratory analysis—had established that the substance was in fact

15

clonazepam or any other controlled substance. As described in Section IV.C, the 101 pills labeled "Clonazepam" were never submitted for laboratory testing. No field testing records for those pills exist in the case file. The sole basis for identifying the substance as clonazepam was a handwritten marker label on a package of pills that Plaintiff had informed Officer Ramirez were purchased in Mexico.

61. The evidentiary basis available to both the affiant and to Doe #1 at the time of filing consisted solely of Officer Ramirez's narrative report, which identified the substance by the handwritten marker label on the packaging. No other document in the case file identified the substance as clonazepam.

62. On January 20, 2023—approximately six weeks after the charge was filed—the DPS Crime Laboratory issued its report. The report identified only methylphenidate. It contained no reference to clonazepam because no substance identified as clonazepam had been submitted for testing.

63. The issuance of the DPS report put the Hidalgo County District Attorney's Office on notice that the laboratory had not confirmed the substance underlying the clonazepam charge. No subsequent laboratory submission for the alleged clonazepam was made at any point. The office maintained the charge for approximately twelve additional months—from the January 20, 2023 laboratory report through dismissal on January 29, 2024—without ever obtaining scientific confirmation that the substance was a controlled substance.

**E. Plea Agreement and Subsequent Vacatur**

64. On or about January 29, 2024, both charges arising from the September 2, 2022 arrest—the felony methylphenidate charge (CR-4168-23-H) and the clonazepam misdemeanor (CR-22-12280-A)—were dismissed as part of a negotiated plea agreement in a separate case.

65. Neither charge resulted in a conviction. Both terminated in Plaintiff's favor.

Civil Action No. 7:26-cv-____

66. The separate case involved an aggravated assault charge arising from an unrelated arrest on August 22, 2023. Plaintiff entered a plea of guilty to the aggravated assault charge. The plea agreement required dismissal of the two Weslaco charges as a condition of the plea.

67. Both the felony methylphenidate charge and the clonazepam charge were pending at the time of plea negotiations. As set forth above, the felony charge alleged a weight contradicted by the only laboratory report in the file, and the clonazepam charge was based on a substance that had never been confirmed as a controlled substance by any scientific method.

68. On December 17, 2025, the 389th Judicial District Court of Hidalgo County granted Plaintiff's application for Writ of Habeas Corpus, vacating the Order of Deferred Adjudication on the aggravated assault charge and withdrawing Plaintiff's guilty plea as involuntary. No extant conviction arising from any of these proceedings remains.

**F. The Post-Habeas Reindictment**

69. On December 17, 2025, the 389th Judicial District Court vacated Plaintiff's plea as involuntary, as described in Section IV.E.

70. On December 19, 2025—two days after the habeas court's order—Plaintiff transmitted a settlement demand to the Hidalgo County District Attorney's Office seeking resolution of Plaintiff's claims against prosecutorial defendants in two pending federal actions.

71. On January 6, 2026, the Hidalgo County Commissioners Court considered and rejected Plaintiff's settlement proposal at its first regular meeting following receipt of the demand. On January 7, 2026, the District Attorney's Office notified Plaintiff in writing that the proposal was not accepted.

72. The underlying arrest occurred on September 2, 2022. By January 2026, the statute of limitations applicable to each potential charge arising from that arrest was as follows:

Civil Action No. 7:26-cv-____

73. Possession of a Controlled Substance in an amount of less than 28 grams—the charge supported by the laboratory-confirmed weight of 22.48 grams—is a Class A misdemeanor under Texas Health and Safety Code § 481.117(b). The statute of limitations for a Class A misdemeanor is two years. Tex. Code Crim. Proc. art. 12.02. That limitations period expired on or about September 2, 2024. The misdemeanor possession charge was time-barred.

74. Possession of a Controlled Substance in an amount of 28 grams or more—the charge in the original July 2023 indictment—is a third-degree felony under § 481.117(d). The statute of limitations for a third-degree felony is three years. Tex. Code Crim. Proc. art. 12.01(4). That limitations period, tolled during the pendency of the original indictment from approximately September 5, 2023 through January 29, 2024, had not yet expired as of January 8, 2026. The felony possession charge remained timely. However, re-filing it would require re-alleging the same weight of "28 grams or more" that the DPS Crime Laboratory report in the office's own file contradicted, as described in the allegations against Doe #2.

75. Possession with Intent to Deliver a Controlled Substance, Penalty Group 3, in an amount of less than 28 grams, is a state jail felony under Texas Health and Safety Code § 481.114. The statute of limitations for a state jail felony is three years. Tex. Code Crim. Proc. art. 12.01(7). That limitations period—measured from the September 2, 2022 arrest—expired on or about September 2, 2025. The charge was independently time-barred unless tolled by a prior pending indictment.

76. On or about January 8, 2026—one day after rejecting Plaintiff's settlement demand and twenty-two days after the habeas court vacated Plaintiff's plea—an Assistant District Attorney for the Hidalgo County District Attorney's Office ("Doe #3") drafted a new charging instrument arising from the same September 2, 2022 arrest. The indictment charged Plaintiff with Possession with Intent to Deliver a Controlled Substance, Penalty Group 3, in an amount of less than 28 grams (methylphenidate).

77. The new indictment alleged the weight as less than 28 grams. The prior indictment arising

18

from the same arrest and the same evidence had alleged the same substance in an amount of "28 grams or more."

78. Possession with Intent to Deliver under Texas Health and Safety Code § 481.114 requires proof of intent to deliver. The case file on January 8, 2026 contained the same evidence it contained in July 2023 when the original possession indictment was returned. No new evidence had been developed in the interim. No evidence of intent to deliver existed in the case file at any point.

79. Specifically, the case file contained no packaging consistent with distribution, no digital communications suggesting sale, no buy money, no controlled purchases, no confidential informant testimony, no surveillance, and no other indicia of delivery. Officer Ramirez's narrative report describes the pills as found in a backpack and center console alongside personal items. Plaintiff presented a prescription at the scene. The entire evidentiary record was consistent with personal possession.

80. No probable cause for the intent-to-deliver element existed in the case file at any point before Doe #3 drafted the charging instrument. The prior charging instrument arising from the same arrest and the same evidence had charged simple possession—not possession with intent to deliver. No intervening investigation, witness statement, or evidentiary development supplied the missing element. The intent-to-deliver element originated in the charging instrument, not in the evidence.

81. The new indictment contained a tolling provision alleging that "an indictment charging the above offense" was previously pending, citing cause number CR-4168-23-H. That prior indictment charged Possession of a Controlled Substance—not Possession with Intent to Deliver.

82. The only difference between the prior charge and the new charge is the element of intent to deliver. Possession and Possession with Intent to Deliver are distinct offenses with different

elements under Texas law. The prior indictment did not charge "the above offense." The tolling allegation is false on the face of the record.

83. Without the tolling provision, the new charge was time-barred as of September 2, 2025—more than four months before the indictment was returned. The false tolling allegation was the sole mechanism by which the charge could overcome the statute of limitations.

84. Upon the return of the new indictment, Plaintiff was required to surrender, was arrested, and was detained for approximately one day before posting bond.

85. On March 2, 2026, the Hidalgo County District Attorney's Office dismissed the Possession with Intent to Deliver charge. The charge terminated without conviction.

## G. The District Attorney's Custom of Filing Without Verification

86. The charges in Plaintiff's case were not isolated errors. They are the product of a custom maintained by the Hidalgo County District Attorney's Office: processing cases into charges without verifying that the evidence supports the charged offense, filing controlled-substance charges without scientific confirmation, accepting police narratives without reviewing available recordings, and maintaining charges even when evidence in the office's own possession contradicts them.

87. **The Pedroza Pattern.** Between May 2017 and August 2023, the District Attorney's Office prosecuted twenty-three cases submitted by DPS Trooper Pablo Pedroza containing verbatim identical language across unrelated suspects. As more fully detailed in Plaintiff's pending related action *Alanis v. Pedroza et al.*, No. 7:25-cv-00393 (S.D. Tex.), those cases involved identical scripted observations and arrest procedures that were the subject of repeated constitutional challenges.

88. By September 2023, the District Attorney's Office had received notice of the deficiencies through suppression motions challenging Fourth Amendment violations, dismissals on the

Civil Action No. 7:26-cv-____

day Pedroza was subpoenaed to testify, dismissals "in the interest of justice," and the Office's own declinations to prosecute certain arrests. In 2024, a court entered an explicit judicial finding of "Lack of probable cause for the arrest. Lack of reasonable suspicion." Despite this multi-year pattern and repeated notice, the Office implemented no verification procedures, no officer-credibility tracking, and no cross-case analysis.

89. **The 19-Day Cross-Agency Pattern.** Within a nineteen-day period in August–September 2023, the District Attorney's Office filed or maintained three cases against Plaintiff from three separate law enforcement agencies. Each case independently lacked adequate evidentiary support. Each reflected the same customs described below—no video review, no forensic verification, no internal-consistency check, no cross-case analysis. The convergence of three deficient cases against the same defendant from three agencies in nineteen days—caught by none of the safeguards the office never implemented—is the product of institutional practice, not coincidence:

   - **August 31, 2023 (DPS—Pedroza):** Charged possession of loperamide, an over-the-counter medication not listed in any Penalty Group, despite laboratory results confirming the substance was not a controlled substance.

   - **September 5, 2023 (Weslaco PD):** The felony indictment alleging a weight contradicted by the laboratory report and the clonazepam charge based on an untested substance, both at issue in this case.

   - **September 18, 2023 (McAllen PD):** Filed charges incorporating video-contradicted police narratives, an arrest-before-investigation chronology apparent on the face of the reports, and a weapon characterization ("knife") that appeared in none of the source materials, as more fully detailed in *Alanis v. Lozano et al.*, No. 7:25-cv-00443 (S.D. Tex.). Those charges were subsequently dismissed following the grant of habeas relief.

90. **This Case.** The office had the DPS laboratory report confirming 22.48 grams of methylphenidate in its possession for six months before presenting the felony indictment alleging "28 grams

21

Civil Action No. 7:26-cv-____

or more." It filed the clonazepam charge without laboratory or field testing and maintained it for twelve additional months after the laboratory report confirmed no clonazepam had been submitted for testing. After Plaintiff obtained habeas relief on December 17, 2025, the office obtained a new indictment charging Possession with Intent to Deliver without any new evidence and without any evidence of intent to deliver in a case file the office had maintained for over three years. That charge was dismissed on March 2, 2026.

91. The reindictment was obtained two days after the Commissioners Court rejected Plaintiff's settlement demand in the pending federal civil rights actions.

## 1. Custom of Charging Without Verifying Laboratory Results

92. The office filed and presented felony indictments without comparing the charged weight or substance against laboratory reports in its own file. This custom produced the felony weight allegation in this case, the loperamide charge, and the January 2026 indictment— each charging an offense that the laboratory evidence in the file did not support.

## 2. Custom of Filing Controlled-Substance Charges Without Scientific Confirmation

93. The office filed and maintained possession charges based solely on handwritten marker labels on packaging, without requiring laboratory or field testing. This custom produced the clonazepam charge, which was maintained for over thirteen months without any scientific confirmation that the substance was a controlled substance.

## 3. Custom of Accepting Police Narratives Without Reviewing Available Recordings

94. The office accepted police narratives as the basis for criminal charges without reviewing available recordings that contradicted those narratives. This custom predates Plaintiff's case. Between May 2017 and August 2023, the office prosecuted twenty-three cases submitted by Trooper Pedroza containing verbatim identical language across unrelated suspects— language that review of the recordings in those cases would have revealed as scripted rather

22

than observational. The office's failure to review recordings in the Pedroza cases over a 6 year span established the same institutional practice that produced the failure to review Officer Ramirez's dashcam recording before accepting his narrative and Cantu's sworn complaint as the basis for Plaintiff's charges. The same custom allowed video-contradicted reports in the McAllen PD case to proceed without verification.

### 4. Custom of No Cross-Case or Cross-Agency Analysis

95. Despite prosecuting twenty-three Pedroza cases with identical language, filing three cases against the same defendant from three agencies in nineteen days, and receiving repeated notice of evidentiary deficiencies, the office maintained no system for tracking problematic officers, recurring defendants, or factual mismatches across cases.

### 5. Custom of Maintaining Charges Despite Contradictory Evidence

96. The office maintained the felony indictment and the clonazepam charge for over a year after possessing the laboratory report that contradicted both. The office obtained the January 2026 indictment charging Possession with Intent to Deliver from a case file that had contained no evidence of intent to deliver at any point during the preceding three years, and included a tolling allegation that misidentified the prior charge.

### 6. Safeguards Not Implemented

97. The following safeguards—routinely used by prosecutorial offices—were never implemented despite years of notice:

- Comparison of charged weight and substance against laboratory reports before indictment;

- Scientific confirmation before filing any controlled-substance charge;

- Review of available dashcam or bodycam recordings before accepting police narratives;

Civil Action No. 7:26-cv-____

- Internal-consistency checks between evidence and charged offense elements;

- Cross-case flagging for the same defendant or same officer;

- Correction or dismissal protocols when evidence in the file contradicts the charge.

## H. Fraudulent Concealment

98. The statute of limitations for Plaintiff's claims was tolled by Defendants' fraudulent con-
cealment of the facts underlying those claims. The specific affirmative acts of concealment,
the claims they tolled, and the circumstances of discovery are set forth below.

99. Officer Ramirez prepared a narrative report containing materially false statements and mate-
rial omissions as set forth in paragraphs 31 through 45. The false statements—that Plaintiff
refused eye contact, was very nervous, made furtive movements, and that Plaintiff's pas-
senger answered all questions—replaced the true account of the encounter with a fabricated
account. The material omissions—the smoke and vaping exchange, the drinking inquiry, and
Plaintiff's presentation of a prescription—removed from the written record every fact favor-
able to Plaintiff. The resulting narrative was internally consistent and facially plausible.
Nothing in the written report indicated it was false.

100. Investigator Cantu incorporated the same false account into a sworn criminal complaint and
affidavit for arrest warrant, attesting under oath to its truth.

101. Officer Ramirez's narrative report further omitted any description of the pat-down of Plain-
tiff's person while describing every other action taken during the encounter. The report
instead included the fabricated claim of "furtive movements" as the only purported justifica-
tion for the undisclosed search.

102. The dashcam recording that contradicted the written reports in every material respect was at
all relevant times in the exclusive custody and control of the Weslaco Police Department.

24

103. The felony indictment returned in July 2023 alleged that Plaintiff possessed methylphenidate in an amount of "28 grams or more." A grand jury indictment is a sworn instrument returned by a judicial body. The indictment affirmatively represented to Plaintiff, the court, and all parties that the weight exceeded the felony threshold when the DPS Crime Laboratory report in the District Attorney's file confirmed the weight as 22.48 grams.

104. The criminal complaint filed December 7, 2022 charged Plaintiff with possession of clonazepam— representing to Plaintiff and the court that a factual basis existed for identifying the substance as a controlled substance when no scientific method had confirmed it.

105. Plaintiff was represented by retained counsel in the criminal proceedings arising from the September 2, 2022 arrest. Discovery materials, including the case file, were received by counsel during the pendency of the criminal case.

106. On or about August 22, 2023, Plaintiff was arrested on an unrelated charge and detained. Discovery materials in the Weslaco case were received by counsel while Plaintiff was incarcerated. Plaintiff remained incarcerated until the plea agreement on or about January 29, 2024.

107. On June 20, 2025, following the conclusion of his criminal representation, Plaintiff obtained the complete client file from former counsel. This was the first occasion on which Plaintiff had direct access to Officer Ramirez's narrative report, the dashcam recording, and the DPS Crime Laboratory report.

108. Plaintiff reviewed Officer Ramirez's narrative report on or about June 20, 2025. Despite having personally experienced the traffic stop and despite actively reviewing the file for potential civil rights violations, Plaintiff accepted the written account as accurate. The false statements were not detectable from the written report alone.

109. On or about January 8, 2026, the Hidalgo County District Attorney's Office filed a new indictment arising from the same arrest, alleging methylphenidate in an amount of *less than*

Civil Action No. 7:26-cv-____

28 grams—directly contradicting the original indictment's allegation of "28 grams or more." This contradiction prompted Plaintiff to scrutinize the evidentiary record.

110. Upon scrutiny, Plaintiff reviewed the DPS Crime Laboratory report—which had been in the client file since June 20, 2025—and discovered for the first time that the laboratory-confirmed weight was 22.48 grams, 5.52 grams below the felony threshold alleged in the original indictment.

111. Plaintiff then reviewed the dashcam recording from the September 2, 2022 traffic stop. Plaintiff had not previously been aware that the dashcam system captured audio of the encounter. Upon viewing the recording, Plaintiff discovered that Officer Ramirez's narrative report was contradicted by the recording in every material respect.

112. Plaintiff's continued review of the case file revealed that the DPS laboratory submission form included only 177 pills and that the laboratory report identified only methylphenidate—establishing that the 101 pills underlying the clonazepam charge had never been scientifically tested.

113. **Counts I through III (Fabrication of Evidence, Unlawful Arrest, and Unlawful Extension of Traffic Stop—Officer Ramirez and Investigator Cantu).** These claims arise from the September 2, 2022 arrest. The affirmative acts concealing these claims were Officer Ramirez's false narrative report, Investigator Cantu's sworn incorporation of that report, and the Weslaco Police Department's exclusive custody of the contradicting dashcam recording. Plaintiff discovered these fabrications after January 8, 2026, when scrutiny prompted by the contradictory reindictment led Plaintiff to review the dashcam recording and compare it to the written reports.

114. **Count IV (Unlawful Search of Person—Officer Ramirez).** In addition to the concealment identified above, Officer Ramirez omitted any description of the pat-down from his narrative report while substituting the fabricated claim of "furtive movements." The pat-down and its

26

lack of lawful basis were not discoverable from the written reports and were revealed only upon Plaintiff's review of the dashcam recording after January 8, 2026.

115. **Count V (Felony Weight Allegation—Defendant Doe #2).** The affirmative act concealing this claim was the July 2023 felony indictment alleging "28 grams or more"—a sworn instrument upon which Plaintiff was entitled to rely. Plaintiff discovered the false weight on or about January 8, 2026, when the contradictory reindictment prompted review of the DPS laboratory report confirming 22.48 grams.

116. **Count VI (Clonazepam Charge—Defendant Doe #1).** The affirmative act concealing this claim was the criminal complaint charging possession of clonazepam, which represented that a factual basis existed for identifying the substance as a controlled substance. The laboratory submission form and report revealing that the substance was never tested were in the client file obtained June 20, 2025, but their significance was not apparent until Plaintiff's post-January 8, 2026 scrutiny of the full evidentiary record.

117. **Count VIII (Malicious Prosecution—Officer Ramirez and Investigator Cantu).** Malicious prosecution accrues upon favorable termination. The charges initiated by Ramirez's and Cantu's conduct were dismissed on January 29, 2024. Plaintiff could not have known that the prosecution lacked probable cause—or that the charges were initiated and maintained on the basis of fabricated reports contradicted by the dashcam recording—until he discovered the underlying fabrications after January 8, 2026. This claim was subject to the same fraudulent concealment identified above: the false narrative report, the sworn complaint incorporating it, and the Weslaco Police Department's exclusive custody of the contradicting dashcam recording.

118. **Count IX (*Monell*—Defendant Palacios).** The most recent constitutional violation underlying the *Monell* claim—the Possession with Intent to Deliver charge—terminated on March 2, 2026. The *Monell* claim is timely measured from that date without tolling. To the extent the *Monell* claim encompasses earlier-accruing constitutional violations, those viola-

27

Civil Action No. 7:26-cv-\_\_\_\_

tions were subject to the same concealment identified above, and the institutional customs that produced them could not have been discovered until the individual fabrications were discovered.

119. Plaintiff's claims accrued no earlier than January 8, 2026—the date the contradictory reindictment prompted Plaintiff's discovery of the fabrications. This complaint was filed on February 26, 2026, within the two-year limitations period measured from the date of discovery.

## IV.  CLAIMS FOR RELIEF

### A.  Count I: 42 U.S.C. § 1983—Fabrication of Evidence (Fourth and Fourteenth Amendments) (Against Officer Ramirez and Investigator Cantu)

120. Plaintiff incorporates by reference all preceding paragraphs.

121. As set forth in paragraphs 31 through 45, Officer Ramirez prepared a narrative report containing materially false statements of fact—including false claims that Plaintiff refused eye contact, was very nervous, made furtive movements, and that Plaintiff's passenger answered all questions—and materially omitted the smoke and vaping exchange, the drinking inquiry, and Plaintiff's presentation of a prescription. Each false statement and omission is contradicted or revealed by the dashcam recording Officer Ramirez himself created.

122. As set forth in paragraphs 32 through 40, and paragraphs 44 through 45, Investigator Cantu incorporated these same false statements into a sworn criminal complaint and affidavit for arrest warrant, attesting under oath to their truth. Cantu was not present during the encounter and had no firsthand knowledge of the events. The dashcam recording that would have revealed every false statement was stored on Cantu's own department's systems and available to him. Cantu did not review it.

123. Under *Franks v. Delaware*, 438 U.S. 154 (1978), a sworn affiant who attests to false facts

28

Civil Action No. 7:26-cv-____

with knowing or reckless disregard for their truth violates the Fourth Amendment. With the false statements excised and the omitted facts restored, the sworn charging documents do not establish probable cause for Plaintiff's arrest.

124. Officer Ramirez's fabrication of the source narrative and Cantu's sworn attestation to its truth violated Plaintiff's Fourth Amendment right to be free from seizure based on fabricated probable cause and Plaintiff's Fourteenth Amendment right not to be deprived of liberty through fabricated evidence.

125. No reasonable officer could believe it lawful to fabricate statements of fact in reports used to support criminal charges. No reasonable officer could believe it lawful to swear under oath to another officer's account without reviewing readily available evidence contradicting that account. The right to be free from fabricated evidence in support of a seizure was clearly established at the time of each Defendant's conduct. Qualified immunity does not apply.

## B. Count II: 42 U.S.C. § 1983—Unlawful Arrest (Fourth Amendment) (Against Officer Ramirez and Investigator Cantu)

126. Plaintiff incorporates by reference all preceding paragraphs.

127. Plaintiff's arrest was effectuated based on sworn charging documents containing the false statements and material omissions identified in Count I. Officer Ramirez prepared the false narrative. Cantu incorporated it into a sworn instrument that provided the basis for judicial authorization of the arrest. With the false statements excised and the omissions restored, no probable cause existed for Plaintiff's arrest.

128. Plaintiff was detained at the Weslaco City Jail for approximately one day, required to post bond of $50,000, and had his vehicle towed and impounded as a direct result of the arrest.

129. The arrest without legitimate probable cause violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure.

29

Civil Action No. 7:26-cv-____

130. No reasonable officer could believe it lawful to arrest and detain a person on the basis of probable cause derived from fabricated reports and a sworn complaint containing materially false statements. Qualified immunity does not apply.

## C. Count III: 42 U.S.C. § 1983—Unlawful Extension of Traffic Stop (Fourth Amendment) (Against Officer Ramirez)

131. Plaintiff incorporates by reference all preceding paragraphs.

132. In the alternative, under *Rodriguez v. United States*, 575 U.S. 348 (2015), Officer Ramirez unlawfully extended the traffic stop beyond the time reasonably necessary to complete the mission of the stop.

133. The mission of the traffic stop was enforcement of the alleged unsafe lane change. Officer Ramirez never completed this mission—no citation or written warning was ever issued, and none exists in the record.

134. Rather than completing the mission, Officer Ramirez conducted an unrelated drug investigation: he initiated an exchange about smoke and vaping based on a claim of visible smoke contradicted by his own dashcam, asked whether Plaintiff had been drinking, asked whether there was anything illegal in the vehicle, and requested consent to search—all before completing the routine tasks of the traffic stop.

135. Officer Ramirez's articulated basis for suspicion—his claim of observing smoke—was contradicted by the dashcam video and yielded no evidence of criminal activity. Officer Ramirez acknowledged on dashcam audio that the substance was not illegal. The drinking inquiry yielded a denial. No basis for reasonable suspicion of criminal activity existed at the time Officer Ramirez extended the stop.

136. Consent to search obtained during a detention that has exceeded its lawful scope is presumptively involuntary. *Florida v. Royer*, 460 U.S. 491 (1983); *Wong Sun v. United States*, 371

30

Civil Action No. 7:26-cv-____

U.S. 471 (1963). All evidence obtained as a result of the unlawful extension, and the arrest premised thereon, violated Plaintiff's Fourth Amendment rights.

137. No reasonable officer could believe it lawful to extend a traffic stop into a drug investigation without reasonable suspicion of criminal activity, on the basis of a claim of visible smoke contradicted by the officer's own recording. The right to be free from unreasonable prolongation of a traffic stop was clearly established by *Rodriguez* at the time of Officer Ramirez's conduct. Qualified immunity does not apply.

## D. Count IV: 42 U.S.C. § 1983—Unlawful Search of Person (Fourth Amendment) (Against Officer Ramirez)

138. Plaintiff incorporates by reference all preceding paragraphs.

139. As set forth in paragraphs 25 through 26, after Plaintiff exited his vehicle and before any arrest, Officer Ramirez directed Plaintiff to turn around with his hands raised, searched Plaintiff's pockets, and conducted a full pat-down of Plaintiff's person. Plaintiff had consented only to a search of his vehicle. Officer Ramirez did not ask for or obtain consent to search Plaintiff's person.

140. Consent to search a vehicle does not constitute consent to search the vehicle's occupants. A warrantless search of a person requires either independent consent, reasonable suspicion that the person is armed and dangerous under *Terry v. Ohio*, 392 U.S. 1 (1968), or a lawful basis for search incident to arrest. None existed at the time of the pat-down. The search occurred before any arrest and cannot be justified as a search incident to arrest.

141. Officer Ramirez's sole purported basis for the pat-down—the claim of "furtive movements"—is a false statement contradicted by the dashcam recording as set forth in the factual allegations. With the false statement removed, no reasonable suspicion that Plaintiff was armed and dangerous existed at the time of the search.

Civil Action No. 7:26-cv-____

142. Officer Ramirez searched only Plaintiff and did not pat down Plaintiff's passenger, despite both occupants having been present in the same vehicle during the alleged furtive movements. A genuine safety concern arising from movements inside the vehicle would apply to both occupants.

143. The warrantless search of Plaintiff's person, conducted without consent, without legitimate reasonable suspicion, and before any lawful arrest, violated Plaintiff's Fourth Amendment right to be free from unreasonable searches.

144. No reasonable officer could believe it lawful to conduct a warrantless pat-down based on claimed furtive movements that the officer's own recording contradicts, without consent, and without any other basis for reasonable suspicion. Qualified immunity does not apply.

**E. Count V: 42 U.S.C. § 1983—Fabrication of Evidence and Malicious Prosecution (Fourteenth and Fourth Amendments) (Against Defendant Doe #2—Felony Weight Allegation)**

145. Plaintiff incorporates by reference all preceding paragraphs.

146. As set forth in paragraphs 52 through 57, Doe #2 drafted a felony indictment alleging Plaintiff possessed methylphenidate in an amount of 28 grams or more but less than 200 grams. The indictment was returned during the July 2023 term of the 92nd Judicial District Court.

147. The DPS Crime Laboratory report—issued six months prior and contained in the District Attorney's case file—confirmed the substance as methylphenidate weighing 22.48 grams. The indictment adopted the substance identification from that report. The same report established the weight as 22.48 grams—5.52 grams below the 28-gram threshold separating a Class A misdemeanor under Texas Health and Safety Code § 481.117(b) from a third-degree felony under § 481.117(d). No other laboratory report, field test, or weight determination existed in the case file that would support a weight allegation of 28 grams or more.

148. Doe #2's conduct in drafting a felony indictment containing a false weight allegation is not

prosecutorial advocacy protected by absolute immunity. Absolute immunity attaches to a prosecutor's exercise of judgment about how to characterize or present known evidence. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). It does not attach to the fabrication of evidence. *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993).

149. Officer Ramirez's report identified the 177 pills as "Adderall" based on the handwritten marker label on the packaging. The DPS Crime Laboratory report corrected that identification: the pills were methylphenidate, not Adderall. The indictment Doe #2 drafted adopted the laboratory's corrected substance identification—methylphenidate, a Penalty Group 3 controlled substance. Doe #2 necessarily read the DPS Crime Laboratory report to make this correction. The same report, on the same page, established the weight as 22.48 grams. The indictment alleged "28 grams or more."

150. Doe #2 did not make a judgment call about how to characterize ambiguous evidence. Doe #2 read a laboratory report, adopted the substance identification from that report, and drafted a weight allegation that the same report contradicted. Using a document as a source for one fact while fabricating another fact from the same document is not prosecutorial advocacy. It is the selective falsification of a factual predicate in a charging instrument.

151. In *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997), the Supreme Court held that a prosecutor who certifies false facts in a legal instrument acts as a witness, not an advocate. The false weight allegation is a factual assertion—a number—embedded in a charging instrument, derived from a report that Doe #2 demonstrably read and selectively relied upon. It falls with *Kalina*'s factual certification category, not the charging decision category.

152. The Fifth Circuit has squarely held that prosecutors are not entitled to absolute immunity when they "step outside of their role as advocates and fabricate evidence," and that such conduct is "fundamentally investigatory in nature." *Wearry v. Foster*, No. 20-30406 (5th Cir. 2022). Only qualified immunity applies.

Civil Action No. 7:26-cv-_____

153. Whether 22.48 is less than 28 is a binary factual question with an unambiguous answer. No reasonable prosecutor with the DPS laboratory report in the case file could believe it lawful to draft a felony indictment alleging a weight of 28 grams or more when that report establishes the weight as 22.48 grams.

154. The charge terminated in Plaintiff's favor without conviction. *Thompson v. Clark*, 596 U.S. 36 (2022).

155. Doe #2's conduct violated Plaintiff's Fourteenth Amendment right not to be deprived of liberty on the basis of fabricated evidence and Plaintiff's Fourth Amendment right to be free from prosecution without probable cause. But for the false weight allegation, the charge would have been a Class A misdemeanor—materially altering Plaintiff's bond conditions, penalty exposure, and the leverage the charge carried in subsequent plea negotiations.

## F. Count VI: 42 U.S.C. § 1983—Fabrication of Evidence and Malicious Prosecution (Fourteenth and Fourth Amendments) (Against Defendant Doe #1—Clonazepam Charge)

156. Plaintiff incorporates by reference all preceding paragraphs.

157. As set forth in paragraphs 58 through 63, Doe #1 administered an oath to an affiant and filed a criminal complaint charging Plaintiff with possession of clonazepam when no scientific method—no laboratory analysis, no field test, no expert identification—had confirmed the substance was a controlled substance. The sole basis for the substance identification was a handwritten marker label on packaging. The charge was maintained for approximately twelve months after the DPS laboratory report was issued without any reference to clonazepam.

158. Doe #1's conduct is not prosecutorial advocacy protected by absolute immunity. Absolute immunity attaches to a prosecutor's exercise of judgment about how to apply law to known facts. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). It does not attach to the fabrication

34

Civil Action No. 7:26-cv-_____

of evidence or the initiation of prosecution without a factual basis. *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993).

159. The identity of a substance as a controlled substance is an element of the offense that must be established by evidence. Doe #1 reviewed a file that contained no scientific confirmation of substance identity and filed a criminal charge asserting the substance was clonazepam. This is not a discretionary judgment about how to characterize known evidence. There was no known evidence of substance identity to characterize or present.

160. The function Doe #1 performed—reviewing the evidentiary basis of a charge before filing—is administrative and investigative. When that review accepts a handwritten packaging label as a sufficient basis to charge possession of a controlled substance, the prosecutor is functioning as the gatekeeper of evidentiary sufficiency, not as an advocate before a tribunal.

161. The Fifth Circuit has held that prosecutors are not entitled to absolute immunity when they "step outside of their role as advocates and fabricate evidence," and that such conduct is "fundamentally investigatory in nature." *Wearry v. Foster*, No. 20-30406 (5th Cir. 2022). Only qualified immunity applies.

162. No reasonable prosecutor could believe it lawful to file a criminal charge for possession of a controlled substance when no scientific method had confirmed the substance was a controlled substance—and then maintain that charge for twelve months after the laboratory report came back without confirming it. Qualified immunity does not shield this conduct.

163. The charge terminated in Plaintiff's favor without conviction. *Thompson v. Clark*, 596 U.S. 36 (2022).

164. Doe #1's conduct violated Plaintiff's Fourteenth Amendment right not to be deprived of liberty on the basis of fabricated evidence and Plaintiff's Fourth Amendment right to be free from prosecution without probable cause. The unsupported charge was pending against

Civil Action No. 7:26-cv-_____

Plaintiff for over thirteen months and was used as leverage in plea negotiations for a separate case.

## G. Count VII: 42 U.S.C. § 1983—Fabrication of Evidence and Malicious Prosecution (Fourteenth and Fourth Amendments) (Against Defendant Doe #3—Possession with Intent to Deliver Charge)

165. Plaintiff incorporates by reference all preceding paragraphs.

166. Defendant Doe #3, acting under color of state law, drafted a charging instrument alleging that Plaintiff "did knowingly possess, with intent to deliver" a controlled substance, methylphenidate, Penalty Group 3, in an amount of less than 28 grams. An indictment containing this charge was returned on or about January 8, 2026.

167. The indictment was returned twenty-two days after the 389th Judicial District Court vacated Plaintiff's plea as involuntary on December 17, 2025, and one day after the Hidalgo County District Attorney's Office rejected Plaintiff's settlement demand on January 7, 2026. The Hidalgo County Commissioners Court had considered and rejected the settlement proposal the preceding day, January 6, 2026.

168. As set forth in paragraphs 69 through 78, no evidence of intent to deliver existed in the case file at any point. The case file contained no packaging consistent with distribution, no digital communications suggesting sale, no buy money, no controlled purchases, no confidential informant testimony, no surveillance, and no other indicia of delivery. The entire evidentiary record was consistent with personal possession.

169. No probable cause for the intent-to-deliver element existed in the case file at any point before Doe #3 drafted the charging instrument. The prior charging instrument arising from the same arrest and the same evidence had charged simple possession—not possession with intent to deliver. No intervening investigation, witness statement, or evidentiary development

36

supplied the missing element between the dismissal of the possession charge and the drafting of the intent-to-deliver charge. The intent-to-deliver element originated in the charging instrument, not in the evidence.

170. As set forth in paragraphs 72 through 75, by January 2026 the misdemeanor possession charge was time-barred, re-filing the felony possession charge would require re-alleging the false weight, and the Possession with Intent to Deliver charge was independently time-barred unless tolled by a prior pending indictment.

171. Doe #3 drafted into the charging instrument a tolling provision alleging that "an indictment charging the above offense" was previously pending, citing cause number CR-4168-23-H. That prior indictment charged Possession of a Controlled Substance—not Possession with Intent to Deliver. The only difference between the prior charge and the new charge is the element of intent to deliver. The tolling allegation is false on the face of the record.

172. Without the tolling provision, the new charge was time-barred as of September 2, 2025—more than four months before the indictment was returned. The false tolling allegation was the sole mechanism by which the charge could overcome the statute of limitations.

173. Doe #3's conduct is not prosecutorial advocacy protected by absolute immunity. Absolute immunity attaches to a prosecutor's exercise of judgment about how to characterize or present known evidence before a tribunal. *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). It does not attach to the fabrication of evidence. *Buckley v. Fitzsimmons*, 509 U.S. 259, 275 (1993).

174. Doe #3 drafted into the charging instrument a false statement of historical fact—that a prior indictment charged "the above offense"—when the prior indictment charged a different offense with different elements. The physical record of cause number CR-4168-23-H proves the statement false on its face. This is not a charging decision. It is not a determination of what offense to pursue. It is a factual assertion about what was previously charged—an

Civil Action No. 7:26-cv-_____

assertion that is verifiably false.

175. In *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997), the Supreme Court held that a prosecutor who personally certifies false facts in a legal instrument acts as a witness, not an advocate, and forfeits absolute immunity—even though the same prosecutor retained immunity for drafting the charging document and the warrant motion. The false tolling allegation is a certification of historical fact embedded in a charging instrument. It falls with *Kalina*'s third category—a factual assertion—not the first two.

176. Without the false tolling allegation, the charge was time-barred as of September 2, 2025. The false factual statement was the sole mechanism by which the prosecution could proceed. Absolute immunity does not shield the fabrication of the factual predicate that made an otherwise time-barred prosecution viable.

177. Separately, Doe #3 drafted the charging instrument to include an offense element—intent to deliver—for which no evidence existed anywhere in the case file. No evidence of intent to deliver existed before the instrument was drafted. The element originated in the instrument, not in the evidence. To the extent this act is not independently shielded by absolute immunity, it constitutes a second act of fabrication.

178. The Fifth Circuit has held that prosecutors are not entitled to absolute immunity when they "step outside of their role as advocates and fabricate evidence," and that such conduct is "fundamentally investigatory in nature." *Wearry v. Foster*, No. 20-30406 (5th Cir. 2022). Only qualified immunity applies.

179. No reasonable prosecutor could believe it lawful to draft a charging instrument adding "with intent to deliver" to a possession charge when the case file contained no evidence of intent to deliver and the element had no evidentiary basis in any document, report, or investigation in the file.

180. No reasonable prosecutor could believe it lawful to draft a tolling allegation stating that

38

Civil Action No. 7:26-cv-_____

a prior indictment charged "the above offense" when the prior indictment charged simple possession and the new instrument charged possession with intent to deliver—offenses with different elements.

181. No reasonable prosecutor could believe it lawful to embed a false tolling allegation in a charging instrument to overcome a statute of limitations bar and initiate a prosecution that would otherwise be time-barred. Qualified immunity does not shield any of these acts.

182. Upon the return of the indictment, Plaintiff was required to surrender, was arrested, and was detained for approximately one day before posting bond.

183. The Possession with Intent to Deliver charge was dismissed on March 2, 2026. The charge terminated in Plaintiff's favor without conviction. *Thompson v. Clark*, 596 U.S. 36 (2022).

184. Doe #3's conduct violated Plaintiff's Fourteenth Amendment right not to be deprived of liberty on the basis of fabricated evidence and Plaintiff's Fourth Amendment right to be free from prosecution without probable cause.

## H. Count VIII: 42 U.S.C. § 1983—Malicious Prosecution (Fourth Amendment) (Against Officer Ramirez and Investigator Cantu)

185. Plaintiff incorporates by reference all preceding paragraphs.

186. Under *Thompson v. Clark*, 596 U.S. 36 (2022), a Fourth Amendment malicious prosecution claim requires that the defendant initiated or maintained a criminal prosecution against the plaintiff, the prosecution lacked probable cause, and the prosecution terminated in the plaintiff's favor.

187. Officer Ramirez initiated the prosecution of Plaintiff by preparing a narrative report containing materially false statements and material omissions as set forth in paragraphs 31 through 45. The narrative report was the sole source document for all subsequent charging instruments.

39

188. Investigator Cantu maintained and advanced the prosecution by incorporating Officer Ramirez's false narrative into a sworn criminal complaint and affidavit for arrest warrant, attesting under oath to their truth without reviewing the dashcam recording that contradicted the narrative in every material respect. Cantu's sworn instruments provided the basis for judicial authorization of the arrest and the filing of criminal charges.

189. But for Officer Ramirez's false narrative and Investigator Cantu's sworn attestation, the charging documents would have reflected the true facts of the encounter as captured by the dashcam recording. As set forth in the factual allegations, the true facts—with fabrications excised and omissions restored—do not establish probable cause for Plaintiff's arrest or prosecution.

190. The criminal charges initiated by Ramirez's and Cantu's conduct were maintained from September 2, 2022 through January 29, 2024, when they were dismissed. Both charges terminated in Plaintiff's favor without conviction.

191. Officer Ramirez's and Investigator Cantu's conduct violated Plaintiff's Fourth Amendment right to be free from malicious prosecution without probable cause.

192. No reasonable officer could believe it lawful to initiate and sustain a criminal prosecution on the basis of a narrative report containing materially false statements contradicted by the officer's own recording. No reasonable officer could believe it lawful to swear under oath to another officer's account without reviewing readily available evidence contradicting that account, thereby providing the evidentiary foundation for criminal charges. Qualified immunity does not apply.

## I. Count IX: 42 U.S.C. § 1983—Municipal Liability Under *Monell* (Against Defendant Palacios in His Official Capacity)

193. Plaintiff incorporates by reference all preceding paragraphs.

Civil Action No. 7:26-cv-_____

194. Defendant Palacios, as the elected District Attorney for Hidalgo County, is the final policy-maker for the Hidalgo County District Attorney's Office. He is sued in his official capacity for the customs and practices of the office that were the moving force behind the constitutional violations Plaintiff suffered.

195. As set forth in paragraphs 79 through 90, the Hidalgo County District Attorney's Office maintained a custom of filing and presenting criminal charges without verifying that the evidence in its possession supported the charged offense. This custom is demonstrated by:

- The felony indictment in this case alleging a weight of "28 grams or more" when the laboratory report in the file confirmed 22.48 grams;

- The clonazepam charge in this case filed without any scientific confirmation that the substance was a controlled substance;

- The loperamide charge filed August 31, 2023, charging possession of a legal over-the-counter medication despite laboratory results confirming it was not a controlled substance;

- The McAllen PD case filed September 18, 2023, incorporating video-contradicted police narratives without review;

- The Pedroza pattern spanning May 2017 through August 2023, prosecuting twenty-three cases containing verbatim identical language despite notice through suppression motions, dismissals, declinations, and a judicial finding of lack of probable cause;

- The Possession with Intent to Deliver charge filed January 8, 2026, charging an offense requiring proof of intent to deliver when the case file contained no evidence of such intent and including a tolling allegation that misidentified the prior charge.

196. The office implemented no laboratory verification procedures, no substance confirmation protocols, no charge-to-evidence reconciliation, no recording review requirements, and no cross-case pattern analysis—despite years of notice that the absence of such safeguards was

41

Civil Action No. 7:26-cv-_____

producing charges unsupported by the evidence.

197. This custom was the moving force behind the constitutional violations in this case. Had the office compared the charged weight against the laboratory-confirmed weight, the felony indictment would not have been presented. Had the office required scientific confirmation, the clonazepam charge would not have been filed. Had the office reviewed the dashcam recording, the false statements in Officer Ramirez's narrative would have been identified. Had the office verified that the evidence supported the charged offense, the Possession with Intent to Deliver indictment would not have been filed.

198. The Hidalgo County District Attorney's Office is liable under two independent *Monell* theories.

199. **Custom or practice.** Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), a municipality is liable when an official custom or practice is the moving force behind a constitutional deprivation. The pattern set forth above—twenty-three Pedroza cases over six years, three cross-agency cases against Plaintiff in nineteen days, and the binary evidentiary failures in this case—establishes a custom of filing charges without verifying evidentiary support so persistent and widespread as to have the force of official policy.

200. **Deliberate indifference.** Under *Connick v. Thompson*, 563 U.S. 51 (2011), a municipality is liable when its deliberate indifference to a known risk of constitutional violations causes injury. The office received repeated notice of evidentiary deficiencies—through suppression motions, dismissals, declinations, and a judicial finding of lack of probable cause—and implemented none of the safeguards identified in paragraphs 97. The persistent failure to act despite repeated notice establishes deliberate indifference.

201. Under *Chiaverini v. City of Napoleon*, 602 U.S. ___ (2024), each charge that independently lacked probable cause gives rise to liability for the distinct harms flowing from that charge.

Civil Action No. 7:26-cv-____

## V. DAMAGES

202. As a direct and proximate result of Defendants' conduct, Plaintiff suffered the following injuries and damages:

### A. Economic Damages

203. **Lost Income and Diminished Earning Capacity:** The permanent arrest record created by Defendants' conduct has caused Plaintiff to fail employment background checks, resulting in past economic losses. The arrest record will continue to subject Plaintiff to employment discrimination for the remainder of his working life, diminishing his lifetime earning capacity. The present value of past and future losses will be established through evidence at trial.

204. **Legal Fees and Costs:** All fees and costs incurred defending against the criminal charges stemming from Defendants' conduct, including attorney's fees and court costs.

205. **Medical and Mental Health Treatment Costs:** Past and future costs for mental health treatment necessitated by the trauma of unlawful arrest, fabricated evidence, and prolonged criminal proceedings.

206. **Financial Harm from Arrest and Detention:** Plaintiff was required to post bond of $50,000 following the September 2022 arrest. Plaintiff's vehicle was towed and impounded. Plaintiff was arrested a second time and required to post bond following the January 2026 indictment. Plaintiff incurred costs associated with securing his release and recovering his property on each occasion.

### B. Non-Economic Damages

207. **Unlawful Search of Person:** Officer Ramirez subjected Plaintiff to a warrantless pat-down and pocket search without consent and without reasonable suspicion before any arrest had been made. The nonconsensual search of Plaintiff's person constitutes an independent

Civil Action No. 7:26-cv-_____

Fourth Amendment injury.

208. **Unlawful Arrest and Detention:** Plaintiff was arrested and detained at the Weslaco City Jail for approximately one day based on charging documents containing materially false statements. Plaintiff was arrested a second time and detained for approximately one day following the January 2026 indictment. Each arrest constitutes an independent Fourth Amendment injury.

209. **Coercive Effect of Fabricated Charges on Plea Negotiations:** The felony indictment alleging a weight contradicted by the laboratory report and the clonazepam charge based on an untested substance were both pending at the time of plea negotiations in a separate case. Both charges were dismissed as a condition of the January 29, 2024 plea agreement. The plea was subsequently vacated as involuntary by the 389th Judicial District Court on December 17, 2025. The maintenance of charges lacking evidentiary support contributed to the circumstances that produced the involuntary plea.

210. **Stigma and Reputational Harm:** Plaintiff was charged with a third-degree felony when the laboratory-confirmed weight supported, at most, a Class A misdemeanor. Plaintiff bore the stigma of a felony charge for approximately eighteen months. The arrest record appears on background check databases, public court records, and internet searches.

211. **Post-Habeas Reindictment:** Following the vacatur of Plaintiff's plea on December 17, 2025, the District Attorney's Office obtained a new indictment charging Possession with Intent to Deliver —an offense for which no evidence of intent to deliver existed in the case file—based on a false tolling allegation that identified a prior possession indictment as charging "the above offense." This subjected Plaintiff to renewed criminal exposure, a second arrest, and the psychological burden of facing a more serious charge. The charge was dismissed on March 2, 2026.

212. **Mental Anguish and Emotional Distress:** Plaintiff has suffered severe psychological harm

44

including anxiety, depression, hypervigilance, intrusive thoughts, and diagnosed Unspecified Trauma and Stressor Related Disorder directly caused by the unlawful arrest, fabricated evidence, and prolonged criminal proceedings. Plaintiff continues to suffer these injuries.

213. **Humiliation and Degradation:** Humiliation from public arrest, booking process, and on-going requirement to disclose arrest history to potential employers.

## C. Punitive Damages

214. Under *Smith v. Wade*, 461 U.S. 30, 56 (1983), punitive damages are available in a § 1983 action when the defendant's conduct is motivated by evil motive or intent, or involves reckless or callous indifference to the plaintiff's constitutional rights.

215. **Officer Ramirez:** Officer Ramirez conducted a warrantless search of Plaintiff's person without consent or reasonable suspicion, then omitted the search from his narrative report while fabricating "furtive movements" as a post-hoc justification. His narrative report contained materially false statements in every material respect—each contradicted by the dashcam recording he himself created. This conduct demonstrates reckless or callous indifference to Plaintiff's constitutional rights.

216. **Investigator Cantu:** Cantu swore under oath to the truth of another officer's account without reviewing the dashcam recording stored on his own department's systems—a recording that contradicted every material statement he attested to. This conduct demonstrates reckless or callous indifference to Plaintiff's constitutional rights.

217. **Defendant Doe #1:** Doe #1 filed a criminal charge for possession of a controlled substance when no scientific method had confirmed the substance was a controlled substance, and the office maintained that charge for twelve months after the laboratory report came back without confirming it. This conduct demonstrates reckless or callous indifference to Plaintiff's constitutional rights.

218. **Defendant Doe #2:** Doe #2 prepared a felony indictment alleging a weight of "28 grams or more" when the only laboratory report in the file—the same report relied upon for substance identification—established the weight as 22.48 grams. This conduct demonstrates reckless or callous indifference to Plaintiff's constitutional rights.

219. **Defendant Doe #3:** Doe #3 prepared an indictment charging Possession with Intent to Deliver when the case file contained no evidence of intent to deliver, and included a false tolling allegation identifying a prior possession indictment as charging "the above offense." This indictment was filed two day after the District Attorney's Office rejected Plaintiff's settlement demand in the pending federal civil rights actions. This conduct demonstrates reckless or callous indifference to Plaintiff's constitutional rights.

## VI. JURY DEMAND

220. Plaintiff demands a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Angel Adalberto Alanis Jr. respectfully requests that this Court enter judgment in his favor and against Defendants, and award the following relief:

(a) **Compensatory Damages:** Compensatory damages against all Defendants, jointly and severally, for all economic and non-economic injuries alleged herein, including lost income, lost employment opportunities, diminished earning capacity, medical expenses, loss of liberty, financial harm from arrest and detention, mental anguish, humiliation, stigma, the coercive effect of unsupported charges on plea negotiations, and the injuries flowing from the post-habeas reindictment;

(b) **Nominal Damages:** In the alternative, nominal damages of one dollar ($1.00) for each constitutional violation proven, to vindicate Plaintiff's clearly established constitutional rights;

Civil Action No. 7:26-cv-____

(c) **Punitive Damages:** Punitive damages against Defendants Ramirez, Cantu, Doe #1, Doe #2, and Doe #3 in their individual capacities, for their deliberate, reckless, and callous indifference to Plaintiff's clearly established constitutional rights, in an amount sufficient to punish this misconduct and deter similar future violations;

(d) **Injunctive Relief Against Defendant Palacios:** An order requiring Toribio Palacios, in his official capacity as District Attorney for Hidalgo County, to implement reforms to prevent future constitutional violations, including:

- Mandatory laboratory result reconciliation—comparing the charged weight, substance, and penalty group classification against the laboratory report—before presenting any indictment or filing any criminal complaint for a controlled substance offense;

- Mandatory scientific confirmation, by laboratory analysis or validated field test, before filing any charge for possession of a controlled substance;

- Mandatory review of available dashcam, bodycam, or other law enforcement recordings before accepting police narratives into charging instruments;

- Internal-consistency verification procedures requiring that factual allegations in charging instruments be reconciled against evidence in the prosecutor's file before filing;

- Cross-case flagging systems for identifying patterns involving the same defendant, the same officer, or recurring factual deficiencies across cases;

- Dismissal or correction protocols requiring prompt action when evidence in the office's possession contradicts the factual basis of a pending charge;

- Mandatory verification that the evidence in the case file supports each element of the charged offense—including, for Manufacture or Delivery charges, affirmative evidence of intent to manufacture or deliver—before presenting any indictment or filing any criminal complaint;

(e) **Declaratory Judgment:** A declaratory judgment that Defendants violated Plaintiff's rights

47

Civil Action No. 7:26-cv-_____

under the Fourth and Fourteenth Amendments to the United States Constitution;

(f) **Pre-Judgment and Post-Judgment Interest:** Interest on all monetary awards at the maximum rate allowed by law pursuant to 28 U.S.C. § 1961;

(g) **Attorneys' Fees and Costs:** Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and costs of court pursuant to 28 U.S.C. § 1920;

(h) **Leave to Amend:** Leave to amend this Complaint as further information is revealed through discovery or continued evaluation;

(i) **General Relief:** Such other and further relief as this Court deems just and equitable.

Respectfully submitted,

Angel Adalberto Alanis Jr.

1107 N Bethel St

Roma, TX 78584

(956) 379-8874

a4alaniz@gmail.com

*Pro Se* Plaintiff

## VERIFICATION

I, Angel Adalberto Alanis Jr., verify under penalty of perjury under the laws of the United States that the foregoing complaint is true and correct to the best of my knowledge, information, and belief.

48

Civil Action No. 7:26-cv-_____

ANGEL ADALBERTO ALANIS JR.

Date: 3/2/2026

49

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| ANGEL ADALBERTO ALANIS JR., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:26-cv-____ |
| | § | |
| OFFICER PABLO RAMIREZ, *et al.*, | § | |
| Defendants. | § | |

## ORDER GRANTING LEAVE TO AMEND AND
## DIRECTING SERVICE OF PROCESS BY UNITED STATES MARSHALS

Pending before the Court is Plaintiff's Motion for Leave to File First Amended Complaint and to Direct Marshal Service of Amended Complaint. (Dkt. No. _____). Also pending is Plaintiff's Motion for Service of Process by United States Marshals. (Dkt. No. _____).

No Defendant has been served or appeared. Federal Rule of Civil Procedure 15(a)(2) provides that leave to amend shall be freely given when justice so requires. The Court finds that leave is appropriate at this early stage, and that judicial efficiency favors a single service event of the operative pleading.

It is therefore **ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint (Dkt. No. _____) is **GRANTED**.

It is further **ORDERED** that the Clerk of Court shall file the First Amended Complaint as the operative pleading in this action.

It is further **ORDERED** that the Clerk of Court shall issue summons for John Doe #3, Assistant District Attorney for the Hidalgo County District Attorney's Office.

1

It is further **ORDERED** that the United States Marshals Service shall serve the summons, the First Amended Complaint, and all attachments upon the following Defendants at the addresses provided by Plaintiff:

1. **Officer Pablo Ramirez**, Weslaco Police Department, 300 S Bridge Ave., Weslaco, TX 78596;

2. **Investigator Leonel Cantu Jr.**, Weslaco Police Department, 300 S Bridge Ave., Weslaco, TX 78596;

3. **John Doe #1, Assistant District Attorney**, Hidalgo County District Attorney's Office, 100 East Cano St., Edinburg, TX 78539;

4. **John Doe #2, Assistant District Attorney**, Hidalgo County District Attorney's Office, 100 East Cano St., Edinburg, TX 78539;

5. **John Doe #3, Assistant District Attorney**, Hidalgo County District Attorney's Office, 100 East Cano St., Edinburg, TX 78539;

6. **Toribio Palacios, District Attorney**, Hidalgo County District Attorney's Office, 100 East Cano St., Edinburg, TX 78539;

It is further **ORDERED** that each Defendant shall file a responsive pleading within twenty-one (21) days of service.

It is further **ORDERED** that Plaintiff's Motion for Service of Process by United States Marshals (Dkt. No. _____) is **DENIED AS MOOT**.

It is SO ORDERED.


Signed this _____ day of _____, 2026.


2

_____

UNITED STATES DISTRICT JUDGE