Civil Action No. 7:26-cv-00100

United States District Court
Southern District of Texas
FILED

APR 03 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF TEXAS**

**McALLEN DIVISION**

ANGEL ADALBERTO ALANIS, JR.,

      Plaintiff,

Civil Action No. 7:26-cv-00100

v.

PABLO RAMIREZ, et al.,

      Defendants.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO PROSECUTOR
DEFENDANTS' MOTION TO DISMISS**

Plaintiff Angel Adalberto Alanis, Jr., proceeding pro se, respectfully opposes the Motion to Dismiss filed by Defendant Hidalgo County District Attorney Toribio "Terry" Palacios (ECF 23) and would show the Court the following:

**I. INTRODUCTION**

Prosecutor Defendants ask this Court to dismiss Plaintiff's claims on four grounds: (1) that Plaintiff's claims are untimely; (2) Eleventh Amendment sovereign immunity; (3) that Defendant Palacios is not a "person" under 42 U.S.C. § 1983; and (4) absolute prosecutorial immunity. Each argument fails.

As a threshold matter, Prosecutor Defendants' statute of limitations argument ignores their own conduct. The prosecution arising from the September 2, 2022 arrest did not terminate in Plaintiff's favor until **March 2, 2026**, when the Hidalgo County District Attorney's Office dismissed the Possession with Intent to Deliver charge that it filed twenty-two days after the habeas court vacated

1

Plaintiff's plea and one day after rejecting Plaintiff's settlement demand. ECF 10 ¶¶ 76, 85. The District Attorney's Office itself treated the prosecution as continuing—its January 8, 2026 reindictment expressly invoked the prior indictment (CR-4168-23-H) as a tolling mechanism to overcome the criminal statute of limitations. ECF 10 ¶¶ 81–83. Defendants cannot take the position in criminal court that the prosecution continued from the original indictment and simultaneously argue in this Court that it terminated on January 29, 2024.

Prosecutor Defendants' sovereign immunity, personhood, and prosecutorial immunity arguments rest on the same foundational error: the mischaracterization of Plaintiff's claims as challenges to individual prosecutorial charging decisions. They are not. Plaintiff's Monell claim (Count IX) challenges five specific *administrative customs* maintained by the Hidalgo County District Attorney's Office. ECF 10 ¶¶ 92–96. Plaintiff's individual-capacity claims against the Doe defendants (Counts V, VI, and VII) challenge the fabrication of factual predicates in charging instruments—conduct that is investigatory, not advocative, and therefore subject to qualified rather than absolute immunity.

The motion should be denied in its entirety.

## II. STANDARD OF REVIEW

On a motion to dismiss under Rules 12(b)(1) and 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court may not credit Defendants' alternative factual narratives, weigh evidence, or resolve factual disputes. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint survives if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Critically, pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Dismissal under Rule 12(b)(6) is disfavored, and "the question is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey v. Tex. A & M*

2

*Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

On a Rule 12(b)(6) motion, the Court is confined to the pleadings. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). To the extent Prosecutor Defendants rely on factual assertions not contained in Plaintiff's First Amended Complaint—including their characterization of where Plaintiff obtained the pills at issue (Mot. at 3)—those assertions are outside the pleadings and must be disregarded or, alternatively, the motion must be converted to one for summary judgment under Rule 12(d) with an opportunity for discovery.

## III.  PLAINTIFF'S CLAIMS ARE TIMELY

### A.  The Prosecution Arising from the September 2, 2022 Arrest Continued Through March 2, 2026

Prosecutor Defendants argue that the statute of limitations for Plaintiff's claims began running on January 29, 2024, when charges were dismissed as part of a plea agreement. Mot. at 5–6. This argument ignores their own subsequent conduct.

The plea agreement that produced the January 29, 2024 dismissals was vacated on December 17, 2025, when the 389th Judicial District Court granted Plaintiff's application for Writ of Habeas Corpus and withdrew Plaintiff's guilty plea as involuntary. ECF 10 ¶¶ 68–69. The legal basis for the dismissals—the plea agreement—no longer exists.

On January 8, 2026, the District Attorney's Office filed a new indictment arising from the *same* September 2, 2022 arrest, charging Plaintiff with Possession with Intent to Deliver a Controlled Substance, Penalty Group 3, in an amount of less than 28 grams (methylphenidate). ECF 10 ¶ 76. The new indictment expressly invoked the prior indictment as a tolling mechanism, alleging that "an indictment charging the above offense" was previously pending under cause number CR-4168-23-H. ECF 10 ¶¶ 81–83. This charge was dismissed on March 2, 2026. ECF 10 ¶ 85. Plaintiff's First Amended Complaint was filed on March 6, 2026.

In a § 1983 malicious prosecution action, the cause of action accrues when criminal proceedings are concluded in the plaintiff's favor. *Winfrey v. Rogers*, 901 F.3d 483, 493 (5th Cir.

3

Civil Action No. 7:26-cv-00100

2018). The District Attorney's Office itself treated the September 2, 2022 prosecution as continuing—its reindictment expressly tied the new charge to the prior indictment and relied on the prior indictment's pendency to overcome the criminal statute of limitations. Defendants cannot take the position in criminal court that this prosecution was a continuation of the original proceeding and simultaneously argue in this Court that the prosecution terminated on January 29, 2024 for civil limitations purposes.

The prosecution arising from the September 2, 2022 arrest did not terminate in Plaintiff's favor until March 2, 2026. All claims arising from that prosecution—including Counts V, VI, VII, and IX—are timely measured from that date.

Count VII (Doe #3, Possession with Intent to Deliver) accrues on its own terms from the March 2, 2026 dismissal. ECF 10 ¶ 85. Count IX (Monell, Defendant Palacios) incorporates the January 8, 2026 reindictment as the most recent constitutional violation underlying the institutional customs claim; it is timely measured from the March 2, 2026 dismissal without any tolling. ECF 10 ¶ 118. Counts V and VI, which challenge the felony weight allegation and the clonazepam charge respectively, arise from the same continuous prosecution and are likewise timely.

## B. Even If Counts V and VI Accrued on January 29, 2024, Fraudulent Concealment Tolls the Limitations Period

Even if this Court were to find that Counts V and VI accrued independently on January 29, 2024—making Plaintiff's February 26, 2026 original complaint twenty-eight days late—those claims are preserved by fraudulent concealment.

Because the Texas statute of limitations is borrowed in § 1983 cases, Texas equitable tolling principles also control. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). Under Texas law, fraudulent concealment is an estoppel doctrine that prevents a wrongdoer from benefiting from a limitations defense. To invoke it, the plaintiff must show that the defendant had: (1) actual knowledge of the wrong; (2) a duty to disclose the wrong; and (3) a fixed purpose to conceal the wrong. *McMahan v. Greenwood*, 108 S.W.3d 467, 493 (Tex. App.—Houston [14th Dist.]

4

2003, pet. denied). The estoppel effect continues until the plaintiff "learns of facts, conditions, or circumstances which would cause a reasonably prudent person to make inquiry, which, if pursued, would lead to discovery of the concealed cause of action." *Borderlon*, 661 S.W.2d at 909.

The concealing instruments here were the charging documents themselves:

**Count V (Felony Weight Allegation—Doe #2):** The July 2023 felony indictment alleged Plaintiff possessed methylphenidate in an amount of "28 grams or more." ECF 10 ¶ 52. A grand jury indictment is a sworn instrument returned by a judicial body. It affirmatively represented to Plaintiff, the court, and all parties that the weight exceeded the felony threshold. The DPS Crime Laboratory report in the District Attorney's file confirmed the weight as 22.48 grams—5.52 grams below the 28-gram felony threshold. ECF 10 ¶¶ 49, 56. Plaintiff was entitled to rely on the sworn indictment's factual representations. The false weight allegation was not discoverable from the face of the charging instrument; it could only be discovered by obtaining and reviewing the underlying laboratory report and comparing the laboratory-confirmed weight to the indictment's allegation.

Plaintiff discovered the contradiction on or about January 8, 2026, when the District Attorney's Office filed a new indictment alleging the *same substance* in an amount of *less than* 28 grams—directly contradicting the original indictment's allegation of "28 grams or more." ECF 10 ¶¶ 76–77, 109–110. This contradiction prompted Plaintiff to scrutinize the evidentiary record, leading to the discovery that the DPS laboratory report had confirmed 22.48 grams all along. ECF 10 ¶ 110.

**Count VI (Clonazepam Charge—Doe #1):** The December 7, 2022 criminal complaint charged Plaintiff with possession of clonazepam, representing to Plaintiff and the court that a factual basis existed for identifying the substance as a controlled substance. ECF 10 ¶ 58. In fact, no scientific method—no laboratory analysis, no field test, no expert identification—had confirmed the substance was clonazepam or any other controlled substance. ECF 10 ¶ 60. The sole basis for the substance identification was a handwritten marker label on packaging. *Id.* The DPS laboratory report, issued January 20, 2023, identified only methylphenidate and contained no reference to clonazepam—because no substance identified as clonazepam had been submitted for testing.

ECF 10 ¶ 62. Plaintiff discovered these facts during the same post-January 8, 2026 review of the evidentiary record. ECF 10 ¶¶ 112, 116.

The filing of criminal charges asserting facts that the evidence in the prosecutor's own file contradicted constitutes affirmative concealment. Plaintiff's discovery of these fabrications on or about January 8, 2026 renders both claims timely. The original complaint was filed February 26, 2026—well within two years of discovery.

## C. Prosecutor Defendants' Attorney-Imputation Argument Fails

Prosecutor Defendants argue that knowledge of the case file's contents should be imputed to Plaintiff from the date his criminal defense attorney received discovery. Mot. at 7. This argument fails for four independent reasons.

### 1. Section 1983 Accrual Is Governed by Federal Law

While Texas supplies the limitations period and tolling principles for § 1983 cases, the accrual rule is a matter of federal law. The governing accrual standard asks when the *plaintiff* knew or had reason to know of the injury. *United States v. Kubrick*, 444 U.S. 111 (1979); *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). This is a plaintiff-specific inquiry. Prosecutor Defendants cite no Fifth Circuit authority applying Texas agency-law imputation principles to determine when a § 1983 plaintiff "knew or had reason to know" of a constitutional violation.

### 2. Receipt of a File Is Not Knowledge of Its Contents

The cases Prosecutor Defendants cite—*Leher v. Zwernemann*, 14 S.W.3d 775, 778 (Tex. App.—Houston [1st Dist.] 2000, pet. denied), and *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 584 (Tex. 2006)—are general agency-law cases about imputing *actual knowledge or notice* acquired by an attorney to the client. *Leher* involved an attorney who was *informed directly* of a mediator's prior professional relationship. 14 S.W.3d at 778. The attorney in that case possessed *actual knowledge* of the relevant fact.

Here, Prosecutor Defendants do not—and cannot—allege that Plaintiff's criminal defense attorney *actually knew* that the indictment's weight allegation contradicted the laboratory report, or that the clonazepam had never been scientifically confirmed as a controlled substance. Receipt of a case file is not the same as knowledge of every discrepancy within it. The imputation doctrine imputes *knowledge actually acquired*; it does not transform the mere physical possession of documents into knowledge of their significance.

The false weight allegation was concealed *within* an otherwise facially valid charging instrument. Discovering the fabrication required comparing a specific number on a specific page of the laboratory report to a specific allegation in the indictment. The clonazepam fabrication required cross-referencing the laboratory submission form, the laboratory report, and the criminal complaint to determine that no substance had been submitted for testing. These are not facts that leap off the page upon casual review of a case file.

### 3. These Are Factual Questions That Cannot Be Resolved at the Pleading Stage

Even if the imputation doctrine were applicable in this context, every factual premise of Prosecutor Defendants' argument requires evidence outside the pleadings: When did defense counsel receive the case file? What documents were contained in it? Did counsel actually review the laboratory report? Did counsel compare the laboratory-confirmed weight to the indictment's allegation? Did counsel communicate any analysis to Plaintiff? None of these facts appear on the face of the complaint, and resolving them would require exactly the kind of factual inquiry that is inappropriate on a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. at 678.

### 4. Defendants Cannot Blame Plaintiff for Their Own Concealment

Prosecutor Defendants' imputation argument, at bottom, contends that Plaintiff should have caught the fabrications in their charging instruments sooner. But "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action." *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996). The indictment alleging "28 grams or more"

and the criminal complaint alleging possession of clonazepam were themselves the misleading instruments. Defendants filed sworn charging documents containing false factual predicates, and now argue that Plaintiff should have independently verified those representations. A defendant who conceals a wrong through affirmative misrepresentation in official court filings cannot shift the blame to the plaintiff for failing to detect the deception. *See Borderlon*, 661 S.W.2d at 908 (fraudulent concealment estops a defendant from relying on limitations).

### D. Prosecutor Defendants Introduce Facts Outside the Pleadings

Prosecutor Defendants assert that Plaintiff "admittedly told Officer Ramirez" about vaping Delta-8 and Delta-11 cartridges (Mot. at 3), that Plaintiff "admits to ownership of these controlled substances" (*id.*), and that Plaintiff "states he purchased these pills in Mexico" (*id.*). To the extent any of these characterizations are not contained in Plaintiff's First Amended Complaint, they are outside the pleadings and must be disregarded on a 12(b)(6) motion. *Brand Coupon Network*, 748 F.3d at 635.

Moreover, these facts are irrelevant to the claims against Prosecutor Defendants. Whether Plaintiff owned the pills, where he obtained them, or what he told the officer during the traffic stop has no bearing on whether (1) the felony indictment alleged a weight contradicted by the laboratory report, (2) the clonazepam charge was filed without scientific confirmation, or (3) the reindictment fabricated an intent-to-deliver element with no supporting evidence and included a false tolling allegation. Prosecutor Defendants' recitation of these facts appears designed to prejudice rather than to address the legal sufficiency of Plaintiff's claims.

## IV. TEXAS DISTRICT ATTORNEYS ARE COUNTY OFFICIALS NOT ENTITLED TO SOVEREIGN IMMUNITY

### A. Binding Precedent Forecloses Prosecutor Defendants' Sovereign Immunity and Personhood Arguments

Prosecutor Defendants ask this Court to dismiss Plaintiff's claims on two threshold grounds: (1) that Defendant Palacios is shielded by Eleventh Amendment sovereign immunity; and (2) that he is not a "person" under § 1983. Mot. at 8–12. Both arguments are foreclosed by binding Fifth Circuit precedent stretching back forty years.

In *Crane v. Texas*, the Fifth Circuit held—in both the original panel opinion and on rehearing—that Texas district attorneys are not protected by Eleventh Amendment immunity and are "persons" within the meaning of 42 U.S.C. § 1983. 759 F.2d 412 (5th Cir. 1985), rehearing denied, 766 F.2d 193 (5th Cir. 1985). On rehearing, the court acknowledged that a Texas DA "has numerous, if relatively minor, attributes of a State official," but concluded that other and more significant factors pointed the other direction: he is elected by the voters of his district, his powers are limited to the territory of his district, he exercises them alone and without responsibility to the State Attorney General, and he is paid by county funds. 766 F.2d at 194–95. The court further noted that the significance of the creation of his office by the State Constitution is diminished by the circumstance that other local offices are created by it as well. *Id.* at 195. The court's conclusion was unequivocal: the DA is "properly viewed as a county official, elected by its voters and responsible for its relevant policy." *Id.*

In *Hudson v. City of New Orleans*, 174 F.3d 677 (5th Cir. 1999), the Fifth Circuit confirmed this rule. Applying the six-factor *Clark* analysis, the court held that the Orleans Parish DA's Office was not an arm of the state. *Id.* at 683. Critically, the court distinguished the Eleventh Amendment analysis from the § 1983 policymaker inquiry: "While we look at the function of the officer being sued in the [§ 1983] context, we do not in our Eleventh Amendment analysis." *Id.* at 681 n.1 (citing *Esteves v. Brock*, 106 F.3d 674, 677–78 (5th Cir. 1997)). This distinction is fatal to Prosecutor

Defendants' approach, which conflates the two frameworks throughout their brief.

*Hudson*'s comparison of Texas and Louisiana DAs further strengthens Plaintiff's position. The court observed that Texas DAs lack sovereign immunity because the office is county-funded, the state AG has no supervisory power over prosecutorial decisions, and the DA is elected by and limited to a single county. *Id.* at 682 (discussing *Crane*, 766 F.2d at 194–95). By contrast, Louisiana DAs possess *more* state-level attributes—including constitutional placement within the state judicial branch and a mechanism for Attorney General oversight—yet the Fifth Circuit *still* denied them Eleventh Amendment protection. *Id.* at 683. If Louisiana DAs are not immune, Texas DAs are *a fortiori* not immune.

In *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir. 1999), the Fifth Circuit reaffirmed: "The rule in this circuit is that a … district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity." *Id.* at 466.

Most recently, in *National Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024), the Fifth Circuit stated in a published opinion that it has "held that Texas district attorneys [are] not protected by the Eleventh Amendment precisely because they are county officials, not state officials." *Id.* at 787 (quoting *Hudson*, 174 F.3d at 682). The court described this as a "categorical approach." *Id.*

This is settled law. It disposes of both Prosecutor Defendants' sovereign immunity argument (Mot. at 8–9) and their "not a person" argument (Mot. at 10–12) in a single stroke. Defendant Palacios is a county official. His office is a "person" under § 1983. The motion should be denied on these grounds alone.

### B. Prosecutor Defendants' Cited Authorities Are Inapposite

Prosecutor Defendants cite *Mi Familia Vota v. Ogg*, 105 F.4th 313 (5th Cir. 2024), and *Quiroz v. Hernandez*, 167 F.4th 254 (5th Cir. 2025), for the proposition that Texas DAs enjoy sovereign immunity. Mot. at 8–9. Neither case holds what Prosecutor Defendants claim.

*Mi Familia Vota* did not hold that Texas district attorneys are state officials. The court found

that the Harris County DA lacked a sufficient *connection to the enforcement* of the specific election code provisions being challenged and therefore the *Ex parte Young* exception did not apply. 105 F.4th at 326–29. That is an enforcement-connection problem specific to the challenged statute— not a holding about DA status. This case is categorically different. Plaintiff does not ask Palacios to stop enforcing a statute he has no connection to. Plaintiff challenges the *administrative customs of Palacios's own office* in processing the very cases his office prosecuted.

Prosecutor Defendants also cite *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997), but *Hudson* explicitly distinguished *Esteves* as "dealing with county liability in the § 1983 context"—a different inquiry from the Eleventh Amendment analysis. 174 F.3d at 681 n.1. Indeed, as the Fifth Circuit noted in *Arnone v. County of Dallas*, the § 1983 policymaker "inquiry is distinct from what we use to decide whether an official is a state actor for Eleventh Amendment purposes." 29 F.4th 262, 267 (5th Cir. 2022). Prosecutor Defendants' brief conflates these two distinct frameworks, and their own cited authorities confirm the error.

## C. Plaintiff's Injunctive Relief Claims Independently Satisfy Ex Parte Young

Even if this Court were to depart from the categorical rule of *Crane* and *NPPA v. McCraw*—which would require overruling binding panel precedent—Plaintiff's claims for prospective injunctive relief independently satisfy *Ex parte Young*, 209 U.S. 123 (1908). The Eleventh Amendment does not bar "relief that serves directly to bring an end to a present violation of federal law." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).

Plaintiff seeks prospective reforms requiring Defendant Palacios to implement mandatory verification procedures, training programs, officer credibility tracking, and accountability measures. The customs Plaintiff challenges are ongoing. After Plaintiff's original charges were dismissed in January 2024, the office continued prosecuting cases under the same customs. The Southerland case was prosecuted under an identical pattern and dismissed with explicit judicial findings of "Lack of probable cause for the arrest. Lack of reasonable suspicion." ECF 10 ¶ 88. And the District Attorney's Office's own conduct in January 2026—filing a new indictment con-

11

taining a fabricated intent-to-deliver element, a false weight contradiction of its own prior indictment, and a false tolling provision—demonstrates that the customs persist. ECF 10 ¶¶ 76–85.

Prosecutor Defendants' reliance on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), is misplaced. In *Lyons*, the plaintiff could not show a realistic threat of future injury from a police chokehold. Here, the customs operate systemically, their continuation is documented through the Southerland dismissal and the 2026 reindictment, and Plaintiff seeks structural reforms to institutional practices—not individualized injunctive relief against future encounters.

## V. DA OFFICES ARE SUBJECT TO MONELL LIABILITY FOR ADMINISTRATIVE POLICY FAILURES

### A. Binding Precedent Establishes That DA Offices Are Local Government Entities Subject to Monell

Having established that Defendant Palacios is a county official and a "person" under § 1983, the question becomes whether Plaintiff has stated a viable *Monell* claim against him in his official capacity. The Fifth Circuit has squarely answered this threshold question: DA offices are amenable to *Monell* suit.

In *Burge v. Parish of St. Tammany*, the Fifth Circuit held that "[f]or purposes of 'official capacity' suits under § 1983, the district attorney's office resembles other local government entities." 187 F.3d at 470. The court then applied standard *Monell* municipal liability principles to the DA's official-capacity claims. The factual posture of *Burge* closely parallels this case: the plaintiff challenged the DA's "failure to establish adequate policies, procedures or regulations to ensure adequate training and supervision of employees." *Id.* at 466. The Fifth Circuit reversed the district court's dismissal on absolute immunity grounds and proceeded to evaluate the claim under the deliberate indifference framework of *City of Canton v. Harris*, 489 U.S. 378 (1989). *Id.* at 466–75.

The Supreme Court's analysis in *Connick v. Thompson*, 563 U.S. 51 (2011), further confirms this framework. In *Connick*, the Court addressed a § 1983 *Monell* claim alleging that the

Orleans Parish DA's office was liable for failing to train prosecutors on *Brady* obligations. The Court reached the merits of the deliberate indifference analysis without ever suggesting that the Eleventh Amendment barred the claim or that the DA was not a "person" under § 1983. *Id.* at 61–71.

Prosecutor Defendants' motion never addresses this line of authority. They offer no argument that the customs themselves fail to state a claim under *Monell*—only that the Court lacks jurisdiction to consider them. If the Court rejects the sovereign immunity and personhood arguments—as *Crane*, *Hudson*, *Burge*, and *NPPA v. McCraw* require—Plaintiff's *Monell* claim stands unchallenged on the merits at this stage.

## B. The Challenged Customs Are Administrative, Not Prosecutorial, and Therefore County-Level

Even under the function-specific analysis governing the § 1983 policymaker inquiry, Plaintiff prevails. The Fifth Circuit requires courts to "identify the level of government for which an official was acting when establishing the policy that is relevant to the claims." *Daves v. Dallas County*, 22 F.4th 522, 533 (5th Cir. 2022) (en banc).

Prosecutor Defendants cite *Arnone v. County of Dallas*, 29 F.4th 262, 269–70 (5th Cir. 2022), in which the Fifth Circuit held that the Dallas County DA was a state policymaker when establishing a policy governing *when to seek revocation of probation*. The court's reasoning turned on the fact that the policy was "inextricably linked with his power to seek [revocation] in individual cases." *Id.* at 270.

*Arnone*'s logic compels the opposite result here. The customs Plaintiff challenges are not "inextricably linked" with the DA's power to prosecute in individual cases. Plaintiff's complaint identifies six specific administrative customs: (1) charging without verifying laboratory results against the charged weight or substance; (2) filing controlled-substance charges without scientific confirmation; (3) accepting police narratives without reviewing available recordings; (4) maintaining no cross-case or cross-agency analysis; (5) maintaining charges despite contradictory evidence

13

in the office's own file; and (6) failing to implement basic safeguards despite years of notice. ECF 10 ¶¶ 92–97.

A laboratory verification protocol does not constrain or govern when the DA exercises prosecutorial discretion—it ensures the DA has accurate facts before making any charging decision. A requirement to obtain scientific confirmation before filing a controlled-substance charge is a quality-control measure, not a prosecutorial judgment. A policy of reviewing available recordings before accepting police narratives is an evidence-management function. Cross-case analysis and officer tracking do not direct individual charging decisions—they detect systemic problems. A protocol for correcting or dismissing charges when the file contradicts them is ministerial housekeeping. These customs are the informational and administrative infrastructure that *precedes* any exercise of prosecutorial judgment.

This distinction is precisely what *Crane* recognized. In *Crane*, the DA had "established policies and procedures of an administrative nature only as to the filing and processing of criminal information in Dallas County." 759 F.2d at 412. The Fifth Circuit held that those administrative procedures constituted county policy for which the county was liable. *Id.* The same reasoning applies here: Defendant Palacios selected the means—or more precisely, the *absence* of means— by which the Hidalgo County DA's Office would screen incoming cases. That choice constitutes county policy.

No state statute directs how a local DA's office must organize its intake screening, design its filing systems, train its line prosecutors, or track officer credibility. Under Texas law, the county funds the DA's office operations, including salaries, facilities, and equipment. Tex. Local Gov't Code § 157.901; Tex. Gov't Code Ch. 41. When Defendant Palacios chose not to implement basic administrative safeguards, he made managerial decisions for the county—not prosecutorial decisions for the state.

14

## C. Plaintiff Satisfies Both Independent Monell Theories

Plaintiff's complaint pleads two independent bases for municipal liability, either of which independently sustains the Monell claim. ECF 10 ¶¶ 186–187.

### 1. Custom or Practice

Under *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a municipality is liable when "an official custom or practice" is the "moving force" behind a constitutional deprivation. A custom need not be formally adopted; it need only be "so common and well-settled as to constitute a custom that fairly represents municipal policy." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc). Proof of a pattern of similar violations is the "ordinary" means of establishing a custom. *Connick v. Thompson*, 563 U.S. 51, 62 (2011).

Plaintiff has alleged a pattern of extraordinary breadth and specificity. The evidence operates at three concentric levels:

*First*, the Pedroza pattern: twenty-three cases over six years containing verbatim identical scripted language across unrelated suspects, prosecuted despite suppression motions, dismissals, the office's own declinations, and a judicial finding of "Lack of probable cause for the arrest. Lack of reasonable suspicion." ECF 10 ¶¶ 87–88, 94.

*Second*, the cross-agency pattern: within a nineteen-day window in August–September 2023, the office filed or maintained three facially deficient cases against Plaintiff from three separate law enforcement agencies—DPS, Weslaco PD, and McAllen PD—each independently lacking adequate evidentiary support, each reflecting the same customs, and none caught by any safeguard. ECF 10 ¶ 89.

*Third*, this prosecution itself: the September 2, 2022 arrest produced *three independently deficient prosecutorial actions* spanning nearly four years:

- The felony indictment alleging "28 grams or more" when the laboratory report in the office's own file confirmed 22.48 grams. ECF 10 ¶¶ 52–57.

15

- The clonazepam charge filed and maintained for over thirteen months without any scientific confirmation that the substance was a controlled substance. ECF 10 ¶¶ 58–63.

- The January 2026 reindictment charging Possession with Intent to Deliver when the case file contained no evidence of intent to deliver, and including a false tolling allegation that misidentified the prior charge as "the above offense." ECF 10 ¶¶ 76–83.

That a single case file could produce three independently deficient charges—each reflecting a different manifestation of the same customs—is itself powerful evidence that the customs are so persistent and widespread as to constitute official policy. Each deficiency was binary and verifiable: 22.48 is less than 28; the clonazepam was never tested; the file contained no evidence of intent to deliver. Each would have been caught by the safeguards the office never implemented. ECF 10 ¶¶ 92–97.

Taken together—twenty-three Pedroza cases, three cross-agency cases in nineteen days, and three independently deficient prosecutorial actions from this single arrest—Plaintiff has alleged a custom "so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

## 2. Deliberate Indifference

Independently, the office is liable under the deliberate indifference standard of *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Connick*, 563 U.S. at 61. Under this theory, a municipality is liable when it is "deliberately indifferent" to a "known or obvious" risk that its failure to train or supervise will result in constitutional violations. *Canton*, 489 U.S. at 390.

The office received repeated, escalating notice of the risk: suppression motions challenging Pedroza's Fourth Amendment violations, dismissals on the day Pedroza was subpoenaed to testify, dismissals "in the interest of justice," the office's own declinations to prosecute certain Pedroza arrests, and ultimately a judicial finding of lack of probable cause. ECF 10 ¶ 88. The declinations are particularly significant—the office *itself recognized* that certain Pedroza stops lacked sufficient

16

basis, evaluated those cases, and said "no." Yet it never built any institutional response. It handled the problem case-by-case and implemented none of the safeguards identified in ¶ 97.

*Connick*'s single-incident holding is precisely what distinguishes this case. The Supreme Court found the plaintiff's theory insufficient because he could not show a pattern. 563 U.S. at 62. Here, the pattern is documented across years, agencies, and officers. Whether these facts ultimately prove deliberate indifference is a question for summary judgment or trial. At the pleading stage, Plaintiff has alleged specific facts—case numbers, dates, documented outcomes, judicial findings—that collectively establish both a widespread custom and the office's deliberate indifference to its consequences. The motion to dismiss should be denied.

## VI. ABSOLUTE PROSECUTORIAL IMMUNITY DOES NOT BAR PLAINTIFF'S CLAIMS

### A. Municipal Defendants Have No Immunity Under § 1983

As a threshold matter, absolute prosecutorial immunity is *legally irrelevant* to Plaintiff's Count IX (Monell municipal liability against Palacios in his official capacity). As the Fifth Circuit held in *Burge*: "Unlike government officials sued in their individual capacities, municipal entities and local governing bodies do not enjoy immunity from suit—either absolute or qualified—under § 1983." 187 F.3d at 466–67 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993)). *See also Owen v. City of Independence*, 445 U.S. 622, 657 (1980) ("a municipality has no immunity from damages liability flowing from its constitutional violations").

In *Burge*, the Fifth Circuit reversed the district court's dismissal of the Monell claim on absolute immunity grounds precisely because "the district court erred in granting summary judgment for the District Attorney in his official capacity on the basis of his absolute prosecutorial immunity because that form of personal or individual immunity is not available in an official capacity suit." 187 F.3d at 467. This holding is directly on point. Prosecutor Defendants' immunity argument, even if meritorious as to the individual Doe defendants, has no application to the Monell

17

claim. Count IX challenges institutional customs, not individual prosecutorial decisions. Absolute immunity has no application.

## B. Doe #2's Fabrication of the Felony Weight Allegation Was Investigatory, Not Advocative

Plaintiff's Count V targets Defendant Doe #2 for drafting a felony indictment alleging Plaintiff possessed methylphenidate in an amount of "28 grams or more" when the DPS Crime Laboratory report in the District Attorney's case file confirmed the weight as 22.48 grams—5.52 grams below the felony threshold. ECF 10 ¶¶ 52–57, 145–155.

Prosecutor Defendants contend that reviewing police reports and incorporating them into charging documents constitutes "professional evaluation of the evidence assembled by the police" entitled to absolute immunity under *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Mot. at 13–15. Prosecutor Defendants quote *Buckley* selectively. The full holding draws a critical distinction between *advocacy* and *investigation*:

> A prosecutor may not shield his investigative work with the aegis of absolute immunity
> merely because, after a suspect is eventually arrested, indicted, and tried, that work
> may be retrospectively described as "preparation" for a possible trial.

*Buckley*, 509 U.S. at 276.

Doe #2 did not make a judgment call about how to characterize ambiguous evidence. Doe #2 read the DPS Crime Laboratory report—necessarily, because the indictment adopted the laboratory's corrected substance identification of methylphenidate (the officer's report had identified the pills as "Adderall" based on the handwritten label). ECF 10 ¶ 149. Doe #2 thus adopted the substance identification from the report and drafted a weight allegation that the *same report, on the same page*, contradicted. ECF 10 ¶ 150. Using a document as a source for one fact while fabricating another fact from the same document is not prosecutorial advocacy. It is the selective falsification of a factual predicate in a charging instrument.

In *Kalina v. Fletcher*, 522 U.S. 118, 129–31 (1997), the Supreme Court held that a prosecutor who certifies false facts in a legal instrument acts as a witness, not an advocate. The false

weight allegation is a factual assertion—a number—embedded in a charging instrument, derived from a report that Doe #2 demonstrably read and selectively relied upon. It falls within *Kalina*'s factual certification category, not the charging decision category.

The Fifth Circuit has held that prosecutors are not entitled to absolute immunity when they step outside their role as advocates and fabricate evidence, and that such conduct is fundamentally investigatory in nature. *Wearry v. Foster*, No. 20-30406 (5th Cir. 2022). Whether 22.48 is less than 28 is a binary factual question with an unambiguous answer. No reasonable prosecutor with the DPS laboratory report in the case file could believe it lawful to draft a felony indictment alleging a weight of 28 grams or more when that report establishes the weight as 22.48 grams. Only qualified immunity applies, and qualified immunity does not shield this conduct.

## C. Doe #1's Filing of the Clonazepam Charge Was Investigatory, Not Advocative

Plaintiff's Count VI targets Defendant Doe #1 for filing a criminal complaint charging possession of clonazepam when no scientific method had confirmed the substance was a controlled substance. ECF 10 ¶¶ 58–63, 156–164. The sole basis for the substance identification was a handwritten marker label on packaging. *Id.*

Doe #1's task was to determine *whether a crime existed*—specifically, whether the substance was in fact a controlled substance under Texas Health & Safety Code §§ 481.102–105. That is not "professional evaluation of evidence" in the advocate's sense. It is a ministerial administrative task—verifying whether the evidence establishes the elements of an offense before filing a charge—that any paralegal, intake clerk, or detective could perform. It is the functional equivalent of a detective checking whether a substance found at a crime scene is illegal before recommending charges. If a detective performing that task would receive only qualified immunity, so must a prosecutor performing the identical function. *Buckley*, 509 U.S. at 276.

Moreover, Doe #1 maintained the charge for approximately twelve months after the DPS laboratory report was issued without any reference to clonazepam—without ever obtaining scientific confirmation that the substance was a controlled substance. ECF 10 ¶ 63. No reasonable

prosecutor could believe it lawful to file and maintain a criminal charge for possession of a controlled substance based solely on a handwritten label, with no scientific confirmation, for over a year. Only qualified immunity applies.

### D. Doe #3's Fabrication of the Intent-to-Deliver Element and False Tolling Provision Was Investigatory, Not Advocative

Plaintiff's Count VII targets Defendant Doe #3 for drafting a charging instrument alleging Possession with Intent to Deliver when the case file contained no evidence of intent to deliver—no packaging consistent with distribution, no digital communications suggesting sale, no buy money, no controlled purchases, no confidential informant testimony, no surveillance, and no other indicia of delivery. ECF 10 ¶¶ 78–79, 168. The prior charging instrument arising from the same arrest and the same evidence had charged simple possession—not possession with intent to deliver. ECF 10 ¶ 80. No intervening investigation or evidentiary development supplied the missing element. *Id.*

The indictment also contained a false tolling provision alleging that "an indictment charging the above offense" was previously pending, citing the prior indictment. ECF 10 ¶ 81. The prior indictment charged Possession of a Controlled Substance—not Possession with Intent to Deliver. Possession and Possession with Intent to Deliver are distinct offenses with different elements under Texas law. The tolling allegation is false on the face of the record. ECF 10 ¶ 82. Without the tolling provision, the charge was independently time-barred. ECF 10 ¶ 83. The false tolling allegation was the sole mechanism by which the charge could overcome the criminal statute of limitations.

The fabrication of a substantive element (intent to deliver) that no evidence supports and the insertion of a facially false tolling provision into a charging instrument are not acts of advocacy. They are the creation of false factual predicates—conduct that *Buckley* and *Kalina* place squarely outside the scope of absolute immunity. Only qualified immunity applies.

Under *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024), a Fourth Amendment malicious prosecution claim may proceed as to any charge that lacks probable cause, even if other charges in the same proceeding are supported. The intent-to-deliver charge lacked probable cause

because no evidence of intent to deliver existed. The charge independently justified detention, bail conditions, and the stigma of being labeled a drug offender facing distribution charges. Plaintiff suffered distinct, cognizable harm from this facially unsupported charge. Prosecutor Defendants' motion does not cite or address *Chiaverini*.

## VII. THE JOHN DOE CLAIMS ARE NOT TIME-BARRED

### A. Equitable Tolling Preserves the John Doe Claims

Prosecutor Defendants argue that the statute of limitations for claims against the unknown ADAs expired and that relation back under Rule 15(c) is unavailable because naming a John Doe defendant reflects lack of knowledge rather than mistake. Mot. at 2. Plaintiff acknowledges that the Fifth Circuit in *Jacobsen v. Osborne*, 133 F.3d 315, 320–22 (5th Cir. 1998), has generally held that John Doe substitutions do not relate back under Rule 15(c)(1)(C). However, Defendants' argument fails because equitable tolling—not relation back—is the operative doctrine.

Texas equitable tolling principles apply in § 1983 cases. *Rotella v. Pederson*, 144 F.3d 892, 897 (5th Cir. 1998). Under these principles, equitable tolling is warranted where a plaintiff diligently pursues identification of an unknown defendant but is prevented from obtaining that information.

Plaintiff's diligence is demonstrated by the following timeline:

- **February 26, 2026:** Plaintiff filed this action, identifying the John Doe ADAs with specificity as the individuals who filed specific charging instruments in identified cause numbers. ECF 1.

- **March 6, 2026:** In the First Amended Complaint, Plaintiff again identified the Doe defendants with specificity by the charging instruments they filed, the dates of filing, and the cause numbers. ECF 10.

- **March 18, 2026:** Plaintiff filed a Motion for Court-Ordered Identification (ECF 21), requesting the Court compel the DA's office to disclose the identities of the ADAs who filed

the relevant charging instruments. Plaintiff submitted a proposed order for the Court's consideration. The DA's office *possesses* this information—these are its own employees who filed its own charging documents—yet has not voluntarily disclosed it.

This timeline demonstrates that Plaintiff did not slumber on his rights. He filed suit, identified the Doe defendants with maximum specificity, and sought judicial intervention to compel disclosure when the DA's office failed to provide the names voluntarily. An institutional defendant should not be permitted to withhold a name it exclusively controls and then argue the clock ran.

### B. The DA's Office Had Actual Notice

Even under the strict *Jacobsen* framework, the purpose of the limitations period—preventing surprise and prejudice—is fully served here. The DA's office has been on notice of this lawsuit since service of the original complaint. The office knows exactly which of its employees filed the criminal complaint on December 7, 2022, drafted the felony indictment in July 2023, and drafted the reindictment on January 8, 2026. No surprise, lost evidence, or faded memories are at issue.

### C. Even If the John Doe Claims Fail, the Monell Claim Is Independent

Critically, even if this Court were to dismiss the individual-capacity claims against the Doe defendants (Counts V, VI, and VII), Plaintiff's Monell claim against Defendant Palacios in his official capacity (Count IX) is *entirely independent*. The Monell claim challenges institutional customs that existed regardless of which specific ADA handled Plaintiff's case. The customs are proven by the twenty-three Pedroza cases spanning eight years, the office's own declinations to prosecute, the multiple dismissals and suppression hearings, the continued prosecution of the pattern through Southerland, and the 19-day cross-agency filing pattern in Plaintiff's own case. ECF 10 ¶¶ 86–90. The identity of the individual Doe defendants is relevant to Counts V, VI, and VII but irrelevant to Count IX.

## VIII. DEFENDANTS MISCHARACTERIZE PLAINTIFF'S WELL-PLEADED ALLEGATIONS

### A. Plaintiff Does Not Demand "Elaborate Investigations"

Prosecutor Defendants characterize Plaintiff's allegations as demanding elaborate investigations into officer conduct. Mot. at 3–4. This is a straw man. Plaintiff alleges that the office failed to implement *basic, minimal safeguards* that required negligible resources:

- **Video review:** Equipment already existed in the office.

- **Officer credibility tracking:** Required only a basic spreadsheet or database entry.

- **Cross-case pattern analysis:** Required only word-search functions across digital files.

- **Substance verification:** Required consulting statutes available online and minutes of effort.

- **Enhanced review procedures:** Required only internal policy memoranda.

ECF 10 ¶¶ 86–97.

These are not elaborate measures. They are the bare minimum one would expect of any office responsible for initiating criminal proceedings that deprive citizens of liberty. By characterizing these basic safeguards as extraordinary demands, Prosecutor Defendants implicitly concede that the office implemented *none* of them.

### B. Plaintiff's Theory Is Custom, Not Respondeat Superior

Prosecutor Defendants' motion appears to conflate Plaintiff's Monell claim with respondeat superior liability for the actions of an individual ADA. That conflation misreads both the complaint and the doctrine. Respondeat superior holds an employer liable simply because an employee committed a tort. Monell rejected that theory. 436 U.S. 658, 691 (1978). But Monell simultaneously held that a municipality is liable when an official custom or policy is itself the moving force behind the constitutional violation. Id. at 694. That is what Plaintiff alleges here. The constitutional

23

violations in this case were not the product of one rogue prosecutor making one bad call. They are the product of an office that—across twenty-three Pedroza cases over six years, three cross-agency cases against Plaintiff in nineteen days, and three independently deficient charges from this single arrest—processed cases into charges without ever verifying that the evidence supported them. ECF 10 ¶¶ 86–97. The claim is not that the office is liable for what its employees did. The claim is that the office is liable for what it never built: the basic administrative infrastructure that would have prevented any of these charges from being filed.

## IX. CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Prosecutor Defendants' Motion to Dismiss in its entirety.

Plaintiff's claims are timely. The prosecution arising from the September 2, 2022 arrest continued through March 2, 2026, as demonstrated by the District Attorney's Office's own reindictment and tolling allegation. Even if Counts V and VI accrued on January 29, 2024, fraudulent concealment tolls the limitations period because the charging instruments themselves were the concealing acts.

Defendant Palacios is a county official, not a state official, under forty years of binding Fifth Circuit precedent. His office is a "person" under § 1983. The Eleventh Amendment does not bar Plaintiff's claims.

Plaintiff's Monell claim (Count IX) challenges administrative customs—not prosecutorial decisions—and municipal defendants have no immunity from damages liability. Plaintiff's individual-capacity claims (Counts V, VI, and VII) target investigatory conduct—fabricating factual predicates in charging instruments—not advocacy, and are therefore subject to qualified rather than absolute immunity.

The John Doe claims are preserved by equitable tolling, and the Monell claim is entirely independent of the Doe defendants' identities.

Civil Action No. 7:26-cv-00100

Respectfully submitted,

_____

Angel Adalberto Alanis, Jr.

Plaintiff, Pro Se

1107 N Bethel St

Roma, TX 78584

956-379-8874

a4alaniz@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2026, a true and correct copy of this Response in Opposition was filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

_____

Angel Adalberto Alanis, Jr.

25